[No. 13972–0–I.   Division One.   October 7, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID HARVEY, *Appellant.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dean Lum, Deputy,* for respondent.

SCHOLFIELD, J.—David Harvey appeals his conviction for burglary in the second degree, contending that the trial court erred in failing to suppress his identification when arrested and statements made by him at that time. We affirm.

### FACTS

At a hearing held pursuant to CrR 3.5, Seattle Police Officer Philip Allen testified regarding the arrest of Harvey as follows: He received a radio report of a burglary in progress in West Seattle at approximately 8:50 p.m. on May 17, 1983. The report identified a black male as the suspect and included a partial clothing description, although Officer Allen admitted that this clothing description was "skimpy" and that he could not remember it. Officer Allen responded, and about 3 or 4 minutes later, when he was approximately 1½ blocks away from the scene, he passed another of the police patrol cars that had been assigned to the report and a taxicab. The driver of the taxicab pointed to a man across the street walking through an apartment complex parking lot and stated, "That's the person that you want." The man fit the description given in the radio broadcast.

Officer Allen drove into the parking lot and ordered the suspect to stop and to place his hands on the patrol car with his legs out. Officer Allen proceeded to pat down the suspect and, while doing so, asked him his name and address and what he was doing there. The suspect identified himself as David Harvey, gave his address, and stated that he had just been dropped off by some people and that

he was not familiar with the area. Officer Allen then advised Harvey of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and Harvey stated that he understood them. Officer Allen then asked Harvey if he had been to 2816 S.W. Nevada and had kicked in the door, to which Harvey replied "[N]o".

Shortly before or while Officer Allen advised Harvey of his constitutional rights, Seattle Police Officers Richard O'Donnell and Richard Hutchison arrived with a witness, Fred Godfrey.[1] Godfrey identified Harvey as the burglar. Officer Allen handcuffed him and placed him in a patrol car.

Officer Hutchison testified that Harvey made no statements while in his presence. Officer O'Donnell testified that shortly before Harvey was read *Miranda,* he said that he had been dropped off by some friends and was looking for a girl friend in one of the apartments.[2]

The taxicab driver could not be located; apparently, he simply left when he saw Harvey being arrested. Harvey's motion to suppress his statement to Officer Allen was denied.

At trial, Jay Dennison, whose home had been burglarized, testified that he had sold his sister's car to Harvey for $400 and a television set about 2 weeks before the burglary. He testified that Harvey had had some problems with the car since the sale. He was not at home when the burglary occurred. The television set and some albums were missing, a turntable had been smashed, and a receiver and another television set were found outside the house. Dennison testified that Harvey had called him the next day and had explained that the car's transmission had gone out, he had

---

[1] Officer Allen testified that Officer O'Donnell, Officer Hutchison, and Godfrey walked up while he was reading Harvey his *Miranda* rights; Officers O'Donnell and Hutchison testified that it was shortly before this time.

[2] At trial, Officer O'Donnell testified that this statement was made after *Miranda* warnings had been given.

come to Dennison's home to get his money back, and he was drunk and angry and had kicked in the door. Harvey offered to pay any damages if Dennison would drop the charges.

Fred Godfrey, Dennison's next–door neighbor, testified that he heard knocking for a few minutes, then a loud crash. He investigated and saw two women putting a television set into a car, which pulled away. He then saw and confronted Harvey, who dropped some stereo components and fell down some stairs. Harvey told Godfrey that Dennison had "ripped him off" and asked Godfrey (and a few other neighbors who had congregated) not to call the police. He stayed for a few minutes and then walked away. About 10 minutes later, the police arrived and transported Godfrey to the scene of arrest, where he identified Harvey.

Officers Allen and O'Donnell also testified at trial. They related the statements made by Harvey, and Officer O'Donnell testified that Godfrey had identified Harvey from the patrol car as they passed. This was just before they passed Officer Allen going in the opposite direction. Officer O'Donnell, Officer Hutchison, and Godfrey then made a U–turn and arrived within 30 seconds to where Officer Allen had stopped Harvey.

Harvey testified that he had had problems with the car ever since purchasing it from Dennison. He testified that he had been drinking heavily on the day of the alleged burglary and that he had gone to Dennison's house to get some of his money back. He remembered being dropped off by friends, knocking on Dennison's door, and waiting on the steps. He denied kicking in the door or entering the house. He remembered meeting Godfrey and walking away, but did not remember being arrested. He claimed that one of the people who had dropped him off must have burglarized the house.

The trial court, in a bench trial, found Harvey guilty.

## IDENTIFICATION AND STATEMENTS

Harvey now contends that both the statements that he

made and his identification by Godfrey should have been suppressed. He argues that he was arrested without probable cause, that he was stopped on insufficient grounds, and that the pat–down search of his person exceeded the permissible scope of a stop under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

First, we shall consider whether Harvey's identification should have been suppressed. Officer O'Donnell testified that Godfrey first identified Harvey as they drove past— before Officer Allen accosted Harvey and while Harvey was merely walking through the parking lot. Thus, the identification could not have been the "fruit" of an illegal seizure because Harvey had not yet been seized. *See Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The identification was properly admitted.

■ We also conclude that sufficient grounds existed for Officer Allen to make a *Terry* stop. "To justify an intrusion, the police officer must be able to point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Williams,* 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (quoting *Terry v. Ohio, supra* at 21). Harvey matched the description that Officer Allen had received, he was walking away 1½ blocks from the scene only a few minutes after the radio report, and he was pointed out as the suspect by a taxicab driver. We hold that these facts, together with rational inferences derived therefrom, justified the investigative stop. *State v. Gardner,* 28 Wn. App. 721, 626 P.2d 56, *review denied,* 95 Wn.2d 1027 (1981).

We also hold that the pat–down search was lawful under the circumstances. In *Terry v. Ohio, supra* at 27, the Supreme Court said:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police

officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

(Footnote and citations omitted.)

Here, Officer Allen had been told of a burglary in process 1½ blocks away. Harvey fit the description and had been pointed out as the suspect. It is well known that burglars often carry weapons. The pat–down frisk in this case falls within the self–protective frisk permitted by *Terry* and necessary to effective law enforcement. It did not have the effect of converting the *Terry* stop into an arrest.

The only statements made by Harvey prior to being advised of his rights were to give his name and address and state he had been dropped off by others and was not familiar with the area. Those statements having been made during a lawful *Terry* stop, there was no violation of the Fourth Amendment, and the trial court was correct in denying Harvey's motion to suppress them.

The evidence against Harvey was overwhelming. Godfrey heard Dennison's door being kicked in and saw Harvey leave Dennison's house carrying stereo equipment. Harvey, himself, admitted the crime to Dennison the next day. Harvey's testimony at trial was not significantly different from his statements to Officer Allen. Applying the "overwhelming untainted evidence" test recently set forth in *State v. Guloy*, 104 Wn.2d 412, 705 P.2d 1182 (1985), if there was error in admitting Harvey's statements, the error was harmless.

Judgment affirmed.

CORBETT, C.J., and WEBSTER, J., concur.