[No. 27288-8-I.    Division One.    August 17, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP
ARTHUR SMITH, *Appellant.*

82

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Knief, Deputy,* for respondent.

PEKELIS, J. — Phillip Arthur Smith appeals from his conviction on three counts of second degree burglary. Smith contends that the trial court erred in (1) failing to enter written findings following the denial of his CrR 3.5 and 3.6 motions to suppress, (2) ruling that the police had probable cause to arrest him, (3) admitting evidence of his prior convictions, and (4) imposing an exceptional sentence above the standard range. We affirm Smith's conviction but remand for resentencing.

## I

On the morning of April 7, 1990, at approximately 5:12 a.m., Kirkland Police Officer James Kissenger received word of a burglary over his police radio. The suspect was described as a black male with dark clothing. Officer Kissenger proceeded to the crime scene in his patrol car. At around 6 a.m., Officer Kissenger received a report of a second burglary in the same area also committed by a black male with dark clothing. Officer Kissenger drove to the scene followed by Officer Randy Cunningham. On the way, Officer Kissenger passed a vehicle leaving the area. It was light at the time and traffic was sparse. Officer Kissenger, noting that the driver, Smith, fit the description of the burglary suspect and that the car's rear license plate was obscured by a plastic cover, turned around and stopped the car.

Officer Kissenger got out of his car with his gun drawn. As he approached, he could see two television sets, a stereo speaker and a VCR inside Smith's car. Officer Cunningham also pulled up and approached Smith's vehicle with his gun drawn, ordering Smith to lean against his car. Briefly looking inside the car, Officer Cunningham could see a "bunch of stuff", including some boxes and a television set. Officer Cunningham then handcuffed Smith, placed him on the ground and read him his *Miranda*[1] rights. When the officers learned that televisions and VCR's were reported missing, Smith was taken into custody.

Upon arriving at the Kirkland jail, Smith asked whether he was being charged with second degree burglary. Officer Cunningham responded " 'Yes, because as far as I know you didn't have any weapons with you when you committed the burglaries.' " Smith confirmed that he did not carry weapons and further said that if any were found they did not belong to him. When Officer Cunningham then remarked, "I guess you were pretty smart when you committed those burglaries and you weren't carrying a weapon," Smith replied, "Yes."

Smith was charged by information with three counts of second degree burglary. Prior to trial, he moved to suppress the evidence found in his car and his statement to Officer Cunningham. At the suppression hearing, Smith testified that he had complied with all of the officers' instructions. He also denied having been read his *Miranda* rights at the scene, claiming instead that the officers threatened him.

The trial court denied the motion to suppress. In its oral decision, the court stated:

> As far as the 3.6 issue, that relates to the stop that was done by Officer Kissenger in this matter of the defendant's vehicle, I would find that if it were not for the obstructed license plate that there would not have been enough here for a stop. Given the circumstances of the obstructed license plate, I think there was enough here for the officers to do a "Terry" stop. . . . It does seem to me that where you have an obstructed rear plate that appears to have been deliberately

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

obstructed, in conjunction with a general description of a black male who had just been burglarizing places, given the hour of the morning, with very light traffic, and the person meeting the description, that that is reason enough to stop.

There was not probable cause for arrest. However, it seems to me that the additional ingredient of the obstructed license plate does give reason to stop the vehicle by the officers at that point in time. Then I believe that it develops into probable cause to arrest. Upon observing, through the clear glass of the vehicle, the speakers, the TVs, with fresh grass on them, and the officers learning at the scene that these were the items taken in the burglary, at that time probable cause to arrest did arise. . . .

As far as the 3.5 issue is concerned, I would find the officers more credible. . . . I do not find that the defendant was threatened. I do find that he was read his "Miranda" rights at the scene, that he indicated that he understood his rights. And that thereafter the statements he made to police were made freely and voluntarily.

At the conclusion of its ruling, the trial court noted that "[f]indings of fact and conclusions of law will need to be prepared." Formal written findings, however, were never entered.

Smith's trial commenced the next day. Prior to opening statements, defense counsel brought a motion under ER 609 to preclude the State from mentioning Smith's prior convictions for first degree rape, second degree robbery, and second degree burglary. Counsel argued that the convictions were not probative of credibility and thus inadmissible. The court reserved ruling on the motion pending Smith's decision to testify.

The State presented the testimony of the arresting officers and the three victims. Although none of the victims could identify Smith, they were able to identify the items found in his car as their missing property. Smith testified that on the morning of his arrest, he met two men at a service station who sold him several television sets, two stereo speakers and three VCR's for $200. He was on his way toward the freeway when the police pulled him over. Before cross examination, the State again moved for the admission of Smith's prior convictions. The trial court determined that the prior convictions were admissible for impeachment purposes. At the end of the trial, the jury returned a guilty verdict on all counts.

At sentencing, Smith's offender score, including present and prior convictions, was 10. The presumptive sentence range for second degree burglary with "9 or more" offender points was 43 months to 57 months. The prosecutor recommended sentences of 120 months for each count, to be served consecutively. Defense counsel recommended a standard range sentence. Smith was sentenced to three consecutive 100-month sentences.

The trial court entered the following written findings of fact and conclusions of law in support of the exceptional sentence:

### I. FINDINGS OF FACT

1. The defendant committed crimes against multiple victims and multiple offender [sic] policy results in a too lenient presumptive sentence.
2. The defendant has consistently demonstrated that he is a danger to the community in that:
   a. He has consistently re-offended very shortly after being released from prison;
   b. He has consistently burglarized occupied residences;
3. The defendant has the following criminal history . . .
4. The defendants [sic] offender score exceeds the maximum matrix score of nine.

### II. CONCLUSIONS OF LAW

1. Each of the above findings of fact is a substantial and compelling reason justifying an exceptional sentence of 100 months on each count to run consecutively.
2. A sentence of 100 months on each count to be served consecutively insures punishment proportionate to the manner in which these crimes were committed, is just and will protect the public.

This timely appeal follows.

## II

Smith first contends that his convictions must be reversed because the trial court failed to enter written findings of fact and conclusions of law pursuant to CrR 3.5[2] and

---

[2]CrR 3.5 provides in part:

"**(c) Duty of Court To Make a Record.** After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."

CrR 3.6,[3] citing *State v. Witherspoon*, 60 Wn. App. 569, 572, 805 P.2d 248 (1991).

In *Witherspoon*, Division Two of this court reversed and dismissed a juvenile's conviction for a conspiracy to commit first degree robbery because of the State's noncompliance with JuCR 7.11(d), which mandates the filing of written findings of fact and conclusions of law in support of the juvenile court's adjudication. The court reasoned that the trial judge's oral opinion was too incomplete to permit review and that the failure to enter written findings unfairly prejudiced the defendant. *Witherspoon*, 60 Wn. App. at 572.

█ The facts in this case do not compel the result reached in *Witherspoon*. Although Smith correctly asserts that the failure to submit written findings and conclusions pursuant to CrR 3.5 and 3.6 is error, such error is harmless where the trial court's oral findings are sufficient to permit appellate review. *State v. Clark*, 46 Wn. App. 856, 859, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987); *State v. Stock*, 44 Wn. App. 467, 476-77, 722 P.2d 1330 (1986). Here, the trial court's oral decision is more than adequate to allow review of the court's suppression rulings. This conclusion is consistent with *Witherspoon*, where the trial court's oral findings were found to be incomplete. Accordingly, the State's failure to draft formal written findings and conclusions, while clearly not recommended, does not necessitate reversal of Smith's conviction.

### III

Smith next contends that the police officers' use of drawn guns and handcuffs exceeded the permissible scope of a *Terry* stop. He thus argues that his detention actually constituted an arrest for which no probable cause existed.

---

[3]CrR 3.6 provides:

"At the conclusion of a hearing, upon a motion to suppress physical, oral or identification evidence the trial court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) the court's findings as to the disputed facts; and (4) the court's reason for the admissibility or inadmissibility of the evidence sought to be suppressed."

■ Our analysis of Smith's contention requires that we consider two issues: Whether the force used in effecting the stop converted it into an arrest and, if so, whether the arrest was supported by probable cause. With respect to the first issue, we reject Smith's claim that he was arrested at the moment that the officers drew their weapons. A police officer is entitled to use a drawn weapon during an investigative stop if there is " '[a] founded suspicion" for the officer's belief that a suspect is armed and presently dangerous. *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)). Here, the officers were responding to reports of actual crimes, specifically, residential burglaries. Smith matched the description provided and was stopped leaving the area of the crimes. We have previously noted that "[i]t is well known that burglars often carry weapons", *State v. Harvey*, 41 Wn. App. 870, 875, 707 P.2d 146 (1985) (officers justified in conducting patdown of burglary suspect). Under these circumstances, we conclude that the officers did not act unreasonably in approaching Smith with their guns drawn.

■ However, although the precise sequence of events is not clear, by the time Smith was lying handcuffed on the ground and being read his *Miranda* rights, an arrest had occurred. We must determine, therefore, whether Smith's arrest was supported by probable cause. Police have probable cause for a warrantless arrest where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to permit a person of reasonable caution to believe that an offense has been or is being committed. *State v. Conner*, 58 Wn. App. 90, 98, 791 P.2d 261, *review denied*, 115 Wn.2d 1020 (1990).

As stated above, Smith matched the description of the suspect and was stopped proceeding away from the scene of the crimes shortly after their occurrence. It was light at the time and there was no other traffic. Almost immediately upon arriving at the scene, Officer Kissenger saw two tele-

visions, a VCR and a stereo speaker inside Smith's car. Officer Cunningham also observed boxes and a television set inside Smith's car. These are the type of goods typically associated with a residential burglary. Based on the report of two residential burglaries, Smith and his car's similarity to the descriptions given, his proximity to the crime scene, and the items observed in his car, the officers had ample cause to arrest Smith.[4]

Accordingly, we conclude that Smith was lawfully arrested and the items found in his car admissible at trial.

## IV

Smith next challenges the trial court's admission of his 1981 rape and two 1982 residential burglary convictions for impeachment purposes under ER 609(a).[5] He argues that the probative value of the convictions was outweighed by their prejudicial effect.

■ Under ER 609(a)(1), a felony conviction is admissible to impeach a witness if the trial court determines in its discretion that the probative value of admitting the evidence outweighs the prejudicial effect to the defendant. *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981). In weighing the value of the evidence against its potential prejudice, the court should consider the following factors: (1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime. *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980).

■ Applying these factors here, Smith argues that he was prejudiced by the remoteness of the prior convictions and length of his criminal record. However, even assuming this to be so, the remaining factors adequately support the trial court's decision to admit Smith's prior convictions.

---

[4]The trial court was in error when it concluded that probable cause did not arise until the officers actually verified what was stolen.

[5]Smith concedes that his 1988 second degree robbery conviction was properly admitted.

Smith's theory of the case was that he purchased the stolen items from a third party. His credibility was crucial to this defense and the State had no direct evidence with which to impeach it. Therefore, it was important for the jury to hear evidence tending to impeach Smith's credibility. In addition, any potential prejudice due to the similarity between the prior crimes and present crimes was diminished because the prior crimes were introduced as unnamed felonies. *See State v. Begin*, 59 Wn. App. 755, 763, 801 P.2d 269 (1990), *review denied*, 116 Wn.2d 1019 (1991); *State v. Bond*, 52 Wn. App. 326, 334, 759 P.2d 1220 (1988). Under these circumstances, the trial court did not abuse its discretion in admitting Smith's convictions under ER 609(a)(1).

## V

Smith next challenges the trial court's decision to impose an exceptional sentence above the standard range.

In reviewing an exceptional sentence, this court must determine whether the findings of the trial court are supported by evidence in the record. RCW 9.94A.210(4)(a); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991). As this is a factual determination, the sentencing judge's findings will be upheld unless they are clearly erroneous. *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990). Additionally, the court's reasons must be "substantial and compelling" enough to merit deviation from the standard range as a matter of law. RCW 9.94A.120(2); *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986).

Here, the trial court's first finding in support of the exceptional sentence was that Smith "committed crimes against multiple victims . . .". Although this finding is supported by the record, the court's reliance on multiple victims as an aggravating factor is incorrect as a matter of law. The existence of multiple victims may only be used as an aggravating factor when a defendant's conduct which forms the basis of the charge creates multiple victims and the State has not filed multiple charges. *State v. Pittman*, 54 Wn. App. 58, 62-63, 772 P.2d 516 (1989) (citing *State v. Fisher*, 108 Wn.2d 419, 426, 739 P.2d 683 (1987)). Here,

multiple charges were filed. Thus, the court's reliance on the existence of multiple victims was error.

■ The trial court's first finding was that the "multiple offender [*sic*] policy results in a too lenient presumptive sentence." This "finding" however, is actually a conclusion of law based on RCW 9.94A.390(2)(g)[6] which, in turn, must be justified by a supporting factual basis. *State v. Batista*, 116 Wn.2d 777, 788-89, 808 P.2d 1141 (1991). The trial court found that Smith's high offender score exceeded the maximum matrix score of 9. Although a high offender score alone cannot justify an exceptional sentence, current multiple offenses may justify a sentence exceeding the standard range when those in excess of the number necessary to reach the maximum range would otherwise go unpunished. *State v. Stephens*, 116 Wn.2d 238, 803 P.2d 319 (1991).

In *Stephens*, the defendant's offender score was 10 points above the maximum allowed under the Sentencing Reform Act of 1981 (SRA). The trial court imposed concurrent 96-month sentences relying on the defendant's high offender score. The Supreme Court upheld the sentence, concluding that imposition of a standard range sentence would result in a sentence which was clearly too lenient under RCW 9.94A.390(2)(g). *Stephens*, 116 Wn.2d at 245. The court reasoned that:

> [a]ny other rule would mean that all additional counts [above the maximum offender score] would be free from additional punishment. Such a rule would be against public policy and inconsistent with the stated purposes of the SRA.

In this case, if the standard sentencing range were applied, Smith's offender score would be 1 point above the maximum set by the SRA. Although this is less than the number of points cited in *Stephens*, Smith did exceed the maximum offender score. In *State v. Holt*, 63 Wn. App. 226, 231, 817

---

[6]The aggravating sentencing factor set out in RCW 9.94A.390(2)(g) allows the court to consider whether:

"The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010."

P.2d 425 (1991) we affirmed an exceptional sentence where the defendant's offender score was only 3 points above the SRA maximum. We conclude that here too the "clearly too lenient" criteria was properly applied to justify an exceptional sentence.

■ In addition, the trial court found that Smith "has consistently demonstrated that he is a danger to the community" because he has (a) "consistently re-offended very shortly after being released from prison" and (b) "consistently burglarized occupied residences". To the extent the court was using Smith's recidivism as evidence of his "future dangerousness" to the community, this finding is invalid. The Supreme Court recently held in *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991) that future dangerousness does not justify an exceptional sentence in a nonsexual offense case.

■ On the other hand, the trial court's finding that the burglaries occurred in occupied residences is a valid reason for imposing an exceptional sentence. At the time of Smith's offenses, the Legislature did not distinguish between burglaries of residences and other buildings. On July 1, 1990, the new crime of residential burglary became effective. RCW 9A.52.025. This crime, which has a higher seriousness level than second degree burglary, reflects the Legislature's determination that residential burglaries are more serious than other burglaries. Hence, the trial court's reliance on the fact that Smith targeted residences to justify a departure from the standard range is consistent with public policy.

■ Finally, as fewer than all of the trial court's sentencing reasons are valid, we must determine whether a remand is necessary. A remand for resentencing is required where the reviewing court cannot conclude from the record that the trial court would have imposed the same sentence if it had considered only the valid aggravating factors. *State v. Barnes*, 117 Wn.2d at 712 (citing *State v. Dunaway*, 109 Wn.2d 207, 220, 743 P.2d 1237, 749 P.2d 160 (1987)). In this case, there is no basis in the record for us to determine

whether the trial court would have imposed an exceptional sentence solely on the bases we have held to be proper.

Accordingly, we affirm Smith's conviction but remand the case for resentencing.[7]

GROSSE, C.J., and COLEMAN, J., concur.

Review granted at 120 Wn.2d 1018 (1993).

---

[7]In remanding the matter for resentencing, we do not reach Smith's final contention that the sentence of three consecutive 100-month sentences was clearly excessive. We note, however, that there is language in the case law suggesting that the trial court must choose between imposing exceptional concurrent sentences or consecutive sentences. *See State v. McClure*, 64 Wn. App. 528, 534, 827 P.2d 290 (1992) (citing *State v. Batista*, 116 Wn.2d at 791).