# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NOS. 68993-2-I |
| | ) | 69151-1-I |
| Respondent, | ) | (CONSOLIDATED CASES) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| E.G., | ) | |
| B.D. 06/13/94, and | ) | |
| | ) | |
| E.D.G. | ) | UNPUBLISHED OPINION |
| B.D. 07/30/97, | ) | |
| Appellants. | ) | FILED: JUNE 17, 2013 |
| | ) | |

LAU, J. — In this consolidated appeal, brothers EG and EDG appeal their juvenile

court convictions for first degree criminal trespass and minor in possession of liquor.

EG's sole challenge on appeal involves the trial court's alleged failure to enter written

CrR 3.5 findings of fact and conclusions of law.[1] This claim fails because the court

entered written findings and conclusions after EG appealed. We affirm his convictions.

EDG contends police officers violated his right to counsel when they elicited postarrest

---

[1] Juvenile Court Rule 1.4(b) makes the Superior Court Criminal Rules applicable to juvenile court offender proceedings.

biographical statements without notice to him about his right to counsel under CrR 3.1. Because the court's failure to suppress the statements constitutes harmless error, we affirm his convictions.

## FACTS

The court's unchallenged findings[2] establish that EG and EDG went to the Southcenter Mall in Tukwila, Washington, on November 25, 2011—also known as "Black Friday." Around 5 p.m., security officer Dion Fernandez asked EG and EDG to leave the mall. Fernandez concluded the brothers were intoxicated and violated a posted rule against exposed undergarments. He told the brothers not to come back to the mall for the rest of the day.

The brothers left the mall but returned approximately one hour later. Fernandez recognized the brothers and radioed for police assistance. Tukwila Police Officer Mike Murphy responded and contacted the brothers in the food court. Murphy noticed that the brothers smelled of alcohol, had watery eyes, and were obviously impaired. As he directed the brothers away from the food court, EDG slapped Murphy's hand. Both brothers cursed loudly. Once a crowd formed, Murphy called for additional officers. Backup units arrived and helped Murphy apply handcuffs. Murphy told the brothers they were under arrest.

Murphy and a second officer escorted the brothers to the mall's security office. Inside the office, Murphy asked the brothers for their names, height and weight, and

---

[2] Neither brother challenges any of the court's findings on appeal. Accordingly, we treat those findings as verities. State v. Gaines, 154 Wn.2d 711, 716, 116 P.3d 993 (2005); State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

dates of birth. Murphy also asked them to provide their mother's contact information. The brothers complied. At no time did the officers provide Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

After the officers issued criminal trespass admonishments to each brother, Officer Erik Kunsmann arrived to transport the brothers to the police station. As Kunsmann entered the office, he heard EG say, "Look at this big, ugly F-er." He also heard EDG say, "I'm bigger than this MF-er." During the ride to the station, the brothers continued to make profane statements. Kunsmann noticed the brothers smelled of alcohol. The brothers were released to their mother.

The State charged EG and EDG with first degree criminal trespass and minor in possession of liquor. RCW 9A.52.070; RCW 66.44.270(2). During the consolidated trial, EG and EDG moved under CrR 3.5 to suppress statements they made to the officers at the mall's security office. The trial court denied the motion and found EG and EDG guilty as charged.

The court entered written findings of fact and conclusions of law to support the convictions, as required under JuCR 7.11(d).[3] After EG and EDG filed notices of appeal, the court entered additional findings of fact and conclusions of law to support its CrR 3.5 hearing.

---

[3] JuCR 7.11(d) provides, "The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal."

## ANALYSIS

### CrR 3.5 Findings and Conclusions

EG assigns error to the trial court's failure to enter written findings of fact and conclusions of law following its CrR 3.5 hearing. He argues we should "remand for entry of the findings of fact and conclusions of law from the CrR 3.5 hearing." Br. of Appellant EG at 5. He does not seek reversal of his convictions.

As discussed above, the court entered written CrR 3.5 findings and conclusions after EG and EDG filed their notices of appeal. Ordinarily, we do not decide questions that are no longer in controversy. State v. Gentry, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). We hold that EG's challenge is moot and affirm his order on disposition.

### CrR 3.5 Ruling

EDG assigns error to the trial court's CrR 3.5 ruling, which permitted the State to introduce statements he made in the mall security office regarding his age and identity.[4] He argues the court should have suppressed the statements, since the police elicited them without advising him of his right to counsel under CrR 3.1. He asks this court to reverse his conviction for minor in possession of liquor and remand for a new trial.[5]

---

[4] EDG also assigns error to the trial court's failure to suppress a video recording containing statements he made to an officer while being transported to the police station. He argues the State used the recorded statements as "evidence of intoxication." Br. of Appellant EDG at 6. The trial court, which also acted as the trier of fact, admitted the video in evidence but did not consider it for any purpose. Any trial court error was harmless beyond a reasonable doubt.

[5] EDG does not expressly challenge the sufficiency of the evidence underlying the court's conclusion that he exhibited the effects of having consumed liquor. He does not seek reversal of his criminal trespass conviction.

The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The protection provided by Article I, section 9 of the Washington State Constitution is coextensive with that provided by the Fifth Amendment. State v. Unga, 165 Wn.2d 95, 100, 196 P.3d 645 (2008). Juveniles enjoy the same right against self-incrimination as adults. RCW 13.40.140(8).

Under the Fifth Amendment, state agents must give Miranda warnings before custodial interrogations. Miranda, 384 U.S. at 444; State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004); Among other things, "[t]he Miranda warnings inform an arrestee of his right to counsel prior to any police interrogation." State v. Staeheli, 102 Wn.2d 305, 309, 685 P.2d 591 (1984).

Washington's CrR 3.1 "goes beyond the constitutional requirements of the [F]ifth and [S]ixth [A]mendments of the United States Constitution." State v. Templeton, 148 Wn.2d 193, 218, 59 P.3d 632 (2002). Under CrR 3.1(b)(1), the right to counsel "accrue[s] as soon as feasible after the defendant is taken into custody, appears before a committing magistrate, or is formally charged, whichever occurs earliest." Thus, "[w]hen a person is taken into custody that person shall immediately be advised of the right to a lawyer." CrR 3.1(c)(1) (emphasis added). If the police obtain evidence in violation of CrR 3.1, the remedy is "suppression of evidence tainted by the violation." State v. Copeland, 130 Wn.2d 244, 282, 922 P.2d 1304 (1996).

It is undisputed that the officers never advised EDG of his right to counsel—either through Miranda warnings or otherwise. The trial court, however, determined that "[w]hen Officer Murphy questioned [EDG] for identifying information, the questions were

-5-

not 'interrogation' for <u>Miranda</u> purposes because they were part of routine booking procedures." Under the circumstances of this case, we agree.

"It is well established that routine booking procedures do not require <u>Miranda</u> warnings." <u>State v. Walton</u>, 64 Wn. App. 410, 414, 824 P.2d 533 (1992) (jail booking officer was not required to give <u>Miranda</u> warnings before asking arrestee for address). "A request for routine information necessary for basic identification purposes is not interrogation even if the information revealed is incriminating." <u>Walton</u>, 64 Wn. App. at 414. "Only if the agent should have reasonably known the information sought was directly relevant to the offense will the request be subject to scrutiny." <u>Walton</u>, 64 Wn. App. at 414. The test for interrogation is objective. <u>State v. Denney</u>, 152 Wn. App. 665, 671, 218 P.3d 633 (2009); <u>see also</u> <u>Walton</u>, 64 Wn. App. at 414 (issue of interrogation is factual). We review the court's decision for clear error and will not reverse "unless we are 'left with a definite and firm conviction that a mistake has been committed.'" <u>Denney</u>, 152 Wn. App. at 671 (quoting <u>State v. Handley</u>, 54 Wn. App. 377, 380, 773 P.2d 879 (1989)).

We hold that the trial court did not clearly err. At trial, Officer Murphy testified that he realized EDG was "impaired" as soon as he made contact. Verbatim Report of Proceedings (VRP) (May 29, 2012) at 83. But there is no suggestion in the record that Murphy sought EDG's identity and age to incriminate him for minor in possession of liquor. To the contrary, Murphy testified that he took EDG and EG "through the standard identification process" and "asked them the standard biographical information, address, physical height, weight, all those sorts of things." VRP (May 29, 2012) at 87. Murphy used the biographical information he elicited to fill out an arrest report for

criminal trespass and to determine EDG's eligibility for booking into the juvenile detention facility. There is no evidence that Murphy elicited EDG's age to determine if EDG was also subject to arrest for minor in possession of liquor.

As it turns out, EDG's admission of minority was incriminating. But as stated above, "[a] request for routine information necessary for basic identification purposes is not interrogation even if the information revealed is incriminating." Walton, 64 Wn. App. at 414. Under the circumstances of this case, we cannot say that the trial court clearly erred in determining that the routine questioning exception applied.

The inquiry continues, however, because the right to counsel under CrR 3.1 reaches beyond constitutional requirements. Templeton, 148 Wn.2d at 218. Unlike the constitutional right to counsel, the rule-based right to counsel accrues as soon as feasible after the police take a defendant into custody. CrR 3.1(b)(1). Here, there is no question that EDG was in custody for purposes of CrR 3.1(b)(1). By the time Murphy elicited EDG's biographical information, EDG had been handcuffed by Murphy, told he was under arrest, and placed in a small room within the mall's security office. Because EDG was clearly in custody, he was entitled to immediate advice regarding his right to counsel. CrR 3.1(c)(1). It is undisputed that the officers never offered such advice.

Because the police violated EDG's rule-based right to counsel, we conclude that the trial court erred in permitting the State to introduce EDG's statements regarding age

and identity at trial. The court should have suppressed the evidence. Copeland, 130 Wn.2d at 282. Nevertheless, we hold that that the error was harmless.[6]

Constitutional error is harmless if we are "convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (citation omitted). Because the error here resulted from a violation of EDG's rule-based right to counsel, rather than his constitutional right to counsel, the constitutional harmless error standard does not apply. Templeton, 148 Wn.2d at 220. Instead, we will suppress the tainted evidence only if, "'within reasonable probabilities, [if] the error [had] not occurred, the outcome of the trial would have been materially affected.'" Templeton, 148 Wn.2d at 220 (second alteration in original) (quoting State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001)).

Although we apply the less stringent harmless error standard, we conclude that the trial court's error was harmless under either standard. At trial, the court admitted a certified copy of EDG's state identification card. The identification card confirmed EDG's age. At trial, the mall security officer also testified that he "knew that they [EDG and EG] were underage" because they "looked very young." VRP (May 29, 2012) at 28. Officer Murphy also described the brothers as "young men." VRP (May 29, 2012) at 82.

The admission of the identification card, coupled with the trial testimony regarding physical appearance, established EDG's minority beyond a reasonable doubt. EDG does not contend—nor could he—that the identification card admitted at trial was

---

[6] Given our harmless error analysis, we need not address the State's argument that EDG's statements regarding identity and age were admissible because they were not "tainted" by the violation of his rule-based right to counsel.

tainted by the violation of his rule-based right to counsel.  He also does not assign error to the court's evidentiary ruling admitting the card in evidence.

Because the trial court's error in failing to suppress EDG's statements was harmless, we affirm EDG's order on disposition.

WE CONCUR: