[No. 40065-7-I.    Division One.    February 1, 1999.]
THE STATE OF WASHINGTON, *Respondent,* v. ALBERT GREG TAITT, *Appellant.*

784

*Neal J. Philip* and *James R. Dixon* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Brian M. McDonald, Senior Deputy*, for respondent.

GROSSE, J. — An exceptional sentence violates the real facts doctrine if the facts justifying the exceptional sentence establish the elements of a more serious crime. Under the facts of this case, second degree rape by forcible compulsion differs from first degree rape only in that the latter requires the infliction of "serious physical injury." Choking someone to unconsciousness does not necessarily constitute the infliction of serious physical injury. The issue is essentially one of fact. Thus, the determination of whether a choking in the course of a second degree rape justifies an exceptional sentence based on deliberate cruelty or establishes the elements of first degree rape is a question reserved for the sentencing court and is reviewed for clear error. The sentencing court's conclusion that Taitt's actions constituted deliberate cruelty was not clearly erroneous. Accordingly, the court did not violate the real facts doctrine. We reverse and remand Taitt's sentence, however, on other grounds.

## FACTS

Count III—Second Degree Rape: A.B. and several friends

were visiting Albert Taitt in Taitt's room at his stepfather's home. Taitt expressed an interest in A.B. and asked her to accompany him outside. In the backyard, he forced her to the ground and held her down. He told her that he would kill her if she did not stop screaming. He removed her clothing, placed his hands around her neck, and began to strangle her. He proceeded to rape her as she lost consciousness. He was still in the process of raping her when she regained consciousness.

When he left her alone, she ran, knocking on several doors until eventually stopping a man driving home. The man took her to his house, and his wife called 911. She made a full report of the incident and was taken to Harborview Medical Center for evaluation. A nurse noted that she had dirt and leaves in her hair and clothing, and the examining doctor found a large scratch on her back, multiple red lines on her neck, and sperm matching Taitt's genetic profile in her vagina.

Count IV—Attempted Second Degree Rape: In his bedroom on the same day, Taitt got on top of L.S. and told his friend John Chase and L.S.'s friend J.D. to leave the room. L.S. begged J.D. not to leave her as Chase tried to push J.D. out of the room. J.D. resisted, but left the room stating, "I'll leave, but I'm going to call the cops because that's rape what's going on in there." Someone briefly reopened the door to the room, Taitt turned, and L.S. ran out. L.S. did not report the incident.

Count II—Second Degree Rape: Two weeks later, Ilya Dayberry invited her friend, K.L., to come with her to meet Taitt. Along with Chase, the group sat in Taitt's room and watched a movie. At some point, Taitt punched K.L. on the side of her head, sat on top of her, placed his hands around her neck and began to strangle her. When she regained consciousness, he made her get on the floor and told her that if she was not quiet he would snap her neck. He then removed her clothes and raped her. Chase and Dayberry were in the room on the bed having sex during this incident.

K.L. had red dots on her face and eyelids, a bruise under her eye, and red lines on her neck. When her brother asked her what happened, she refused to respond. She did not report the rape until after she was contacted by the police concerning Dayberry's death.

Count I—First Degree Murder: One week later, Randy, who also lived at Taitt's house, and Taitt's friend Anthony picked up Taitt and Dayberry at a gas station. Taitt introduced Dayberry as Chase's girl friend. At Taitt's house, Taitt, Chase, and Dayberry went to Taitt's room, while Anthony and Randy stayed upstairs. Later in the evening, Chase and Dayberry had sex in Taitt's room. Chase then went upstairs, watched a movie, and fell asleep.

Early in the morning, Taitt's stepfather returned home from work and heard loud music coming from Taitt's room. He entered the room, turned down the music, and had a brief conversation with Taitt. He left for a short period of time and returned to ask Taitt a question. When he returned, he saw Dayberry's body laying in the middle of the floor. He had not noticed her there before. Dayberry had duct tape on her mouth and around her hands, which were tied behind her head. Taitt and Chase were sitting down in the room. Taitt stated that he had tried CPR, but she had been dead for 20 minutes. The stepfather called the police.

The paramedics noticed blood in the whites of Dayberry's eyes, ligature marks on her neck, and locks of hair that appeared to have been cut from her head. The medical examiner found bruises to her head, welts on her side that were consistent with whipping from a cord, and lacerations to her liver, likely caused by hard blows. At the police station, Taitt admitted to strangling Dayberry with a telephone cord.

The police found a telephone cord on the kitchen phone up a flight of stairs from Taitt's room. The cord and phone had blood on them. DNA tests matched sperm found in Dayberry's vagina with Chase, and sperm found in her anus with Taitt. The amount of P-30, a component of se-

men, found in her anus indicated that Dayberry had not moved much following Taitt's ejaculation.

Prior to trial, at trial, and at the conclusion of trial, Taitt moved to sever counts I and II from counts III and IV. The court denied the motion, finding evidence for each count cross-admissible, demonstrating a common scheme or plan. The court also denied Taitt's motion to exclude photographs of the door leading to Taitt's room, which read, "Welcome to Hell's Playpen," and photographs showing pornographic pictures covering most of the walls in Taitt's room. The court ruled that witnesses testifying as to Taitt's room could not refer to the pictures on his walls as pornography.

Taitt was convicted on all counts. The court imposed an exceptional sentence of 542 months for count I, and ran counts II and III consecutively to each other and to count I. Taitt's total sentence was 678 months. He appeals.

## DISCUSSION
### I. Second Degree Rape Sentence

■ Based on Taitt's offender score, the standard range for second degree rape is 149 to 198 months. The sentencing court imposed an exceptional sentence of 68 months for each count without making a finding of substantial and compelling reasons to justify a downward departure from the sentencing guidelines. This was error. While the court may impose a standard range sentence for each rape count and run each sentence concurrently or consecutively to the other and concurrently or consecutively to the murder sentence, the court may not impose individual sentences below the standard range without finding substantial and compelling reasons for doing so. For this reason alone, we must reverse Taitt's sentence and remand for resentencing. Nevertheless, we address Taitt's remaining contentions.

After imposing two 68-month sentences, the court then ran the sentences consecutively to each other and consecutively to the murder count, finding that Taitt acted with deliberate cruelty by choking K.L. and A.B. into unconsciousness. Taitt argues that the court's finding was er-

roneous because use of force to overcome resistance is a necessary element of second degree rape and therefore already considered in computing the presumptive range for the offense.

■■ A similar argument was considered and rejected by this court in *State v. Russell*.[1] In *Russell* we noted that "even where a statute proscribes behavior that generally could be described as deliberately cruel, it remains possible for a defendant to engage in gratuitous violence more egregious than typical."[2] Thus, an exceptional sentence was deemed proper in *Russell* because the defendant engaged in conduct far more severe than that necessary to satisfy the elements of the crime.

In this case, the victims suffered choking to the extent of unconsciousness. The court found Taitt's conduct to be more egregious than typical of second degree rape. While forcible compulsion is an element of the crime, it is possible to use force exceeding the level necessary to commit second degree rape. The court's finding was adequate as a matter of law.

■■ The exact level of force used in a second degree rape case, however, brings us to Taitt's second contention. A person is guilty of first degree rape if such person engages in sexual intercourse with another person by forcible compulsion and inflicts serious physical injury.[3] Second degree rape, in contrast, requires only sexual intercourse by forcible compulsion.[4] Taitt argues that characterization of his conduct as deliberate cruelty violates the real facts doctrine because the infliction of serious physical injury is the only distinguishing element between first degree and second degree rape.

Under the real facts doctrine, the sentencing court may not justify an exceptional sentence by using facts that

---

[1]*State v. Russell*, 69 Wn. App. 237, 848 P.2d 743 (1993).

[2]*Russell*, 69 Wn. App. at 253 (footnote omitted).

[3]RCW 9A.44.040(1)(c).

[4]RCW 9A.44.050(1)(a).

would elevate the crime for which the defendant was convicted to a more serious crime.

> Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2) (d), (e), (g), and (h).[5]

"The real facts doctrine reflects the principle that a sentence should be based only on 'the actual crime of which the defendant has been convicted, his or her criminal history, and the circumstances surrounding the crime.' "[6] The doctrine is intended to increase the accuracy of convictions under the Sentencing Reform Act of 1981 and to require prosecutors to obtain convictions for criminal behavior they want the judge to consider during sentencing.[7] In essence, it is unjust to allow a prosecutor to prove a lesser crime beyond a reasonable doubt and then obtain a sentence in excess of the guidelines established for that crime based on facts establishing a higher degree crime but proven at a hearing by a mere preponderance.[8]

The State relies on our opinion in *State v. Talley*.[9] Talley, convicted of third degree rape, argued that the facts used by the court in imposing an exceptional sentence based on deliberate cruelty established the element of forcible compulsion in the more serious crime of second degree rape. We held, "The real facts doctrine does not prohibit a sentencing court from considering facts that could also be used to prove a higher degree crime, *as long as [the court] does not do so because it is dissatisfied with the plea agreement or jury verdict.*"[10] We further stated that Talley was

---

[5]RCW 9.94A.370(2) (including reviser's note).

[6]*State v. Tierney*, 74 Wn. App. 346, 350, 872 P.2d 1145 (1994) (citation omitted).

[7]David Boerner, Sentencing in Washington § 9.16 (1985).

[8]RCW 9.94A.370.

[9]*State v. Talley*, 83 Wn. App. 750, 923 P.2d 721 (1996), *aff'd on other grounds*, 134 Wn.2d 176, 949 P.2d 358 (1998).

[10]*Talley*, 83 Wn. App. at 761 (emphasis added).

not punished for a crime he did not commit because his sentence was not as high as the bottom of the standard range for second degree rape.[11]

Upon further review, our holding appears to be in conflict with the reasoning behind the doctrine and the plain language of the statute. For this reason, in reconsidering *Talley*, and in accord with RCW 9.94A.370(2), we hold that justifying an exceptional sentence by relying on facts that elevate the seriousness of the crime violates the real facts doctrine *in all circumstances* except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(d), (e), (g), and (h).

Applying the real facts doctrine to the present case, the essential question is whether choking someone into unconsciousness constitutes the infliction of a serious physical injury, sufficient to elevate a second degree rape to first degree rape. The answer to this question hinges on the definition of "serious physical injury."

While RCW 9A.04.110(4)(a) defines "physical injury," neither the Legislature nor case law has provided a definition for "serious" physical injury.[12] Division Two of this court has noted that leaving the definition of "serious" to the trier of fact is consistent with the legislative intent:

> The Legislature has not defined the term "serious physical injury," nor is there case law definition. In our view it is neither necessary nor desirable to attempt to do so in a jury instruction. The term speaks for itself, is adaptable to the type of injury in issue and permits argument both pro and con. The jury is usually told it may rely upon common sense and the "common experience of mankind."[13]

And we agree.

Taitt's actions do not necessarily establish the infliction of serious physical injury as a matter of law. Thus, whether

---

[11]*Talley*, 83 Wn. App. at 761-62.

[12]*See* RCW 9A.04.110(4)(a) (defining "bodily injury," "physical injury," and "bodily harm" as physical pain or injury, illness, or an impairment of physical condition).

[13]*State v. Welker*, 37 Wn. App. 628, 638 n.2, 683 P.2d 1110 (1984).

his acts constitute deliberate cruelty or rise to the level of serious physical injury under the first degree rape statute is a factual question for the sentencing court. And we cannot say that the court's finding was clearly erroneous. Thus, while we reverse Taitt's sentence and remand to the trial court for resentencing because the trial court failed to find substantial and compelling reasons to justify a downward departure from the sentencing guidelines, the facts of this case do not demand reversal under the real facts doctrine.

A majority of the panel has determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040 and it is so ordered.

WEBSTER, J., concurs.

Cox, J. (concurring) — I concur, but write separately solely on the *State v. Talley*[14] issue. I agree that under the facts of this case, there is no violation of the real facts doctrine. There is no need to revisit the reasoning of *Talley* as it may apply more generally. Accordingly, I do not join in that portion of this court's opinion.

After modification, further reconsideration denied June 24, 1999.

[14]83 Wn. App. 750, 923 P.2d 721 (1996), *aff'd on other grounds*, 134 Wn.2d 176, 949 P.2d 358 (1998).