IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30555-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELY HERNANDEZ GARCIA, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Ely Hernandez Garcia appeals his convictions for three counts of drive-by shooting "with the intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang . . . its reputation, influence, or membership." RCW 9.94A.535(3)(aa). At trial, the State introduced evidence that Mr. Hernandez Garcia told two corrections officers that he associated with the Sureño gang. On appeal, he challenges: (1) the sufficiency of the evidence supporting his conviction and the aggravating factor, (2) the admissibility of the corrections officers' testimony, (3) the propriety of two jury instructions, and (4) an error in the judgment and sentence. We affirm the convictions, but remand to correct the judgment and sentence.

FACTS

On the night of June 15, 2011, Juan Reyna Espindola sat in his pickup in the driveway of 634 East Third Street in Grandview. He heard what he described as "detonations." Report of Proceedings (RP) at 238. He then looked to the street, where he saw "fire" coming from a car. RP at 238. He realized that it was gunfire and hid in his pickup. He heard the car, which was driving slowly and with its lights off, accelerate.

Meanwhile, the Gonzalez Moreno family was asleep at 632 East Third Street. Fidel Gonzalez Moreno and his wife Ramona Gonzalez were in their bed, which was butted against a window that faced the street. Their 17-year-old son, Fidel Gonzalez, was asleep in the living room, which also had a street-facing window. The gunshots awoke the family. Bullets hit a car and a pickup parked in front of their house.

At the same time, Sergeant Earl Ripplinger, Officer Seth Bailey, and Officer Kevin Glasenapp were on the 600 block of East Second Street. They were there responding to an unrelated call. They heard two gunshots coming from the south and a car accelerating toward the east.

Officers Bailey and Glasenapp headed east toward the intersection. They saw a car turn onto the cross street. The car could not stay in its lane and its tires were squealing. The officers saw that the car contained four men. The car eventually stopped

2

a few blocks away and only driver Ely Hernandez Garcia remained in the car. The police arrested him on suspicion of first degree assault and drive-by shooting.

The police found passengers Angel Mendez, brothers Manuel Campos and Marcos Campos, and a 9 mm handgun nearby. A fingerprint technician matched a print on the 9 mm magazine to Mr. Mendez.

The police found two spent 9 mm shell casings in front of the Gonzalez Moreno residence. The casings were about 25 or 30 feet apart. They also found a bullet several feet from the damaged pickup, but were unable to find the second bullet. Without forensic analysis, the police could not determine the angle at which the gun may have been discharged.

The State charged Mr. Hernandez Garcia as an accomplice to three counts of drive-by shooting—one for each member of the Gonzalez Moreno family. It also alleged that Mr. Hernandez Garcia had committed the crimes to obtain or maintain his membership or to advance his position in the hierarchy of a gang, RCW 9.94A.525(3)(s), or with intent to directly or indirectly cause a benefit, aggrandizement, gain, profit, or other advantage to or for a gang, its reputation, influence, or membership, RCW 9.94A.535(3)(aa).

No. 30555-4-III
*State v. Hernandez Garcia*

*Suppression Hearing*

Mr. Hernandez Garcia moved to suppress the testimony of corrections officers

Krystal Lipp and William King because they took statements from Mr. Hernandez Garcia

without giving him a *Miranda*[1] warning.

Officer Lipp booked Mr. Hernandez Garcia into the Yakima County jail on

June 17, and Officer King interviewed him later that day. Both officers testified that they

knew that Mr. Hernandez Garcia was charged with first degree assault and drive-by

shooting, but had no additional information about the charges. Both testified that they

asked him standard sets of questions used to determine inmates' housing needs. The sets

included questions about gang affiliation. Officers Lipp and King both explained that

they do not house rival gang members together. Officer King also explained that, "[t]hey

may have issues with gang members but they may not be gang members." RP at 214.

According to the officers, Mr. Hernandez Garcia told them that he associated with

Sureños.

Mr. Hernandez Garcia testified that the Grandview police officers had given him a

*Miranda* warning. He also testified that he asked Officer King if he had to answer his

questions, but that Officer King said that they were "only for housing reasons." RP at

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

220. Mr. Hernandez Garcia said that he would not have answered the questions had he known that the prosecution would use his answers against him.

The court denied the motion to suppress. It reasoned that the questions asked by Officers Lipp and King were routine and the officers had no idea that the questions would be useful to the prosecution. The court explained,

> I think the testimony was very clear that this is, to their knowledge, a first degree assault and drive-by shooting. The concept of a gang affiliation or aggravator, I think, is a fairly nuanced concept and it was not added. It was not a part of this, as I understand it, until the information was filed on June 21, four days after the questions were asked.

RP at 229.

*Trial Testimony*

Detective Ricardo Abarca testified as a gang expert for the State. He testified that he did not have any information on whether Mr. Hernandez Garcia was a gang member or associate, but that Angel Mendez and the Campos brothers were known members of the Little Valley Locos, which is a subset of the Sureños. He also testified that Fidel Gonzalez was a member of the Bell Gardens Locos. According to Detective Abarca, the two gangs are rivals.

Detective Abarca testified that respect is very important in gang culture. He explained that, if a gang member wants respect, he needs to make himself known by

5

committing crimes and instilling fear into the community and rival gangs. He further explained that, if a gang member is disrespected, he would likely retaliate or else risk hurting his position in the gang.

Manuel Campos testified for the defense. He testified that he and Mr. Mendez were once Little Valley Locos members. He said that the day before the shooting, he was driving near Fidel Gonzalez's house with Mr. Mendez and Luis Flemate. A kid threw a rock at Mr. Campos's car and broke his windshield. He knew that the kid associated with the Bell Gardens Locos and Fidel Gonzalez in particular, but he did not know whether the kid was a member of that gang. Mr. Campos testified that Mr. Mendez "seemed a little upset" about the rock incident. RP at 341. The prosecutor asked Mr. Campos whether the three discussed retaliation. Mr. Campos explained, "No. Well, Angel and them like were just like, oh, you got to do something. Angel was talking pretty much about wanting to do something, him and Luis." RP at 343.

According to Mr. Campos, he, his brother, Mr. Hernandez Garcia, and Mr. Mendez were on the way to Mr. Flemate's house on the night of the shooting. He testified that Mr. Hernandez Garcia slowed the car down in front of the Gonzalez Moreno house. He testified that Mr. Hernandez Garcia looked surprised when Mr. Mendez began shooting.

Mr. Hernandez Garcia testified that he was not a gang member, but knew that Mr. Mendez belonged to the Little Valley Locos. According to Mr. Hernandez Garcia, he and Mr. Mendez had been driving around, drinking, and smoking marijuana before picking up the Campos brothers on the night of the shooting. He testified that, before the shooting, he was driving the group to the house of a friend named Luna.

Mr. Hernandez Garcia's testimony indicated that he did not know he was participating in a drive-by shooting. He explained that he slowed down in front of the Gonzalez Moreno house because Mr. Mendez told him to stop. Mr. Hernandez Garcia thought that he was stopping because he accidentally drove past Luna's house. Mr. Hernandez Garcia explained that, when he heard gunfire, he did not realize that Mr. Mendez was shooting. He thought that their car was being fired upon, so he accelerated to get away from the gunfire. When he stopped the car, he thought it was "weird" that all of the passengers jumped out and ran. RP at 430.

The jury found Mr. Hernandez Garcia guilty of all three counts. It also found that Mr. Hernandez Garcia committed the crimes "with intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang its reputation, influence, or membership." Clerk's Papers (CP) at 118-20.

DISCUSSION

*Sufficiency of the Evidence—Drive-by Shooting*

Mr. Hernandez Garcia first argues that there was insufficient evidence to convict him of drive-by shooting.

A challenge to the sufficiency of the evidence is ordinarily reviewed for substantial evidence. *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107 (2000). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that a finding is true. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). In a review for substantial evidence, this court views all evidence and reasonable inferences in a light most favorable to the State. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). This court also defers to the trier of fact on issues of conflicting testimony, witness credibility, and overall weight of the evidence. *Id.* at 874-75.

A person is guilty of drive-by shooting if "he or she recklessly discharges a firearm . . . in a manner which *creates a substantial risk of death or serious physical injury* to another person and the discharge is . . . from a motor vehicle." RCW 9A.36.045(1) (emphasis added). The issue here is whether there is sufficient evidence to support the "creates a substantial risk of death or serious physical injury" element. Mr. Hernandez

8

Garcia contends that it is insufficient because Mr. Mendez shot directly into cars and, therefore, any risk to the Gonzalez Moreno family was insubstantial.

"Substantial" is not defined by statute. Mr. Hernandez Garcia suggests that we define the word using case law from other jurisdictions. However, we give a term its ordinary meaning when it is not defined by statute. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). The ordinary meanings of "substantial" include "not seeming or imaginary," "not illusive," "REAL, TRUE," "being of moment," "IMPORTANT, ESSENTIAL," and "soundly based." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (1993).

There is no Washington case law explaining what evidence is sufficient to support drive-by shooting's substantial risk element. Mr. Hernandez Garcia relies on a case from Indiana—*Boushehry v. State*, 648 N.E.2d 1174 (Ind. Ct. App. 1995). In that case, the issue was whether there was sufficient evidence of criminal recklessness, which similarly requires "'a substantial risk of bodily injury to another person.'" *Id.* at 1177 (quoting former Ind. Code 35-42-2-2 (1988)). The defendant there shot toward a road while aiming for a goose 25 yards away. *Id.* at 1176. The appellate court reversed the conviction because there was no evidence that anybody was in or near the line of fire. *Id.* at 1177.

9

Even if this court adopted the "line of fire" reasoning, the facts here are distinguishable. In *Boushehry*, the defendant clearly shot at a goose. *Id.* at 1176. Here, the evidence supports an inference that Mr. Mendez shot at the Gonzalez Moreno house. But even if he did not shoot at the house, unlike in *Boushehry*, there was not an empty street in the background. There was a house full of people.

Mr. Hernandez Garcia argues that the evidence clearly showed that Mr. Mendez intended to shoot at the cars and that he shot at an angle away from the Gonzalez Moreno house. We disagree. When viewed in a light most favorable to the State, the evidence here could easily support the finding that Mr. Mendez posed a substantial risk to the Gonzalez Moreno family. The evidence shows that Mr. Mendez had been drinking and smoking marijuana and that he shot out of a moving car. There was no expert testimony to estimate the angle at which Mr. Mendez fired the gun, but the bullets hit two cars directly in front of a house where people were sleeping in the front rooms. The jury could have inferred that the Gonzalez Moreno family was in the line of fire and at a substantial risk of death or serious physical injury.

There was substantial evidence to support the jury's verdict.

No. 30555-4-III
*State v. Hernandez Garcia*

*Jury Instructions—"Physical Injury"*

Next, Mr. Hernandez Garcia contends that the trial court lowered the standard of proof by declining to instruct the jury on the definition of "serious physical injury."

Jury instructions must instruct the jury that the State has the burden to prove each element of the crime beyond a reasonable doubt. *State v. Peters*, 163 Wn. App. 836, 847, 261 P.3d 199 (2011). A trial court commits reversible error if it instructs the jury in a manner that relieves the State of its burden. *Id.* Here, Mr. Hernandez Garcia argues that the trial court relieved the State of its burden by defining "physical injury" rather than "serious physical injury." Whether the court's instruction correctly stated the law is an issue that we review de novo. *Id.*

Once again, drive-by shooting requires "a substantial risk of death or *serious physical injury*." RCW 9A.36.045(1) (emphasis added). The "to convict" instructions here told the jury that there must be "serious physical injury." CP at 106-08. "Serious physical injury" is not a term defined by statute, but "physical injury" is. RCW 9A.04.110(4)(a). "Physical injury" is "physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a). The court instructed the jury on that definition.

Mr. Hernandez Garcia contends that those instructions, like the ones in *State v.*

11

*Kyllo*, 166 Wn.2d 856, 215 P.3d 177 (2009), impermissibly lowered the standard of proof. In *Kyllo*, the defendant argued that he was not guilty of second degree assault because he acted in self-defense. *Kyllo*, 166 Wn.2d at 859-60. The trial court incorrectly instructed the jury that the defense required fear of great bodily harm rather than fear of injury. *Id.* at 863. Additionally, the trial court instructed the jury on the definition of "substantial bodily harm" in connection with the second degree assault, but not the definition of "great bodily harm" in connection with self-defense. *Id.* at 863-64. The Supreme Court reasoned that, although the definition of "substantial bodily harm" was correct, the jury could easily have misunderstood it to be the same as "great bodily harm." *Id.* at 865. Under the circumstances, the court concluded that the instructions lowered the State's burden of proof. *Id.* at 864.

Relying on *Kyllo*, Mr. Hernandez Garcia contends that defining "physical injury" instead of "serious physical injury" lowered the standard of proof by misleading the jury into believing that drive-by shooting required a mere physical injury. We disagree. Unlike the self-defense instruction in *Kyllo*, the "to convict" instruction here properly instructed the jury of the necessary level of harm. Moreover, the court here defined "physical injury" and explained in its next instructions that "serious physical injury" was necessary to convict. CP at 105-08. The likelihood of confusion here was much lower

12

than in *Kyllo*.

Mr. Hernandez Garcia relies on case law holding that "serious" and "substantial" are indistinguishable. *See Born v. Thompson*, 117 Wn. App. 57, 69 P.3d 343 (2003), *rev'd on other grounds*, 154 Wn.2d 749, 117 P.3d 1098 (2005). In *Born*, the issue was whether Mr. Born had committed a "violent act" that supported an involuntary commitment order. *Id.* at 70. Embedded in the definition of "violent act" was the phrase "nonfatal injury," which the court equated with "serious physical injury." *Id.* at 72. The court then concluded that it saw "no meaningful difference between 'serious' and 'substantial'" and relied on the Washington Pattern Jury Instructions definition of "substantial bodily harm." *Id.* at 73 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.03.01 (3d ed. 2008)).

Mr. Hernandez Garcia argues that, because *Born* equated "serious physical injury" with "substantial bodily harm," this court should too. However, *Born*'s conclusion narrowly applied "for purposes of defining what behavior constitutes a 'violent act' under the statute for these purposes." *Id.* Our purposes are not the same as those in *Born*.

*Born* also does not address two principles that apply here. First, when a term is defined by statute, that definition controls. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). "Bodily injury" is specifically defined by statute. RCW 9A.04.110(4)(a).

13

Second, when a term is not technical or defined by statute, it is given its ordinary meaning and juries need not be instructed on its definition. *Watson*, 146 Wn.2d at 954; *State v. Brown*, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997). "Serious" is not a technical term or defined by statute.

Moreover, this court has reasoned that the trier of fact can use its common sense to determine the meaning of "serious." *See State v. Welker*, 37 Wn. App. 628, 683 P.2d 1110 (1984); *State v. Taitt*, 93 Wn. App. 783, 970 P.2d 785 (1999). In *Welker*, the State charged Mr. Welker with first degree rape, an element of which is "serious physical injury." 37 Wn. App. at 637 (citing RCW 9A.44.040(1)(c)). Mr. Welker assigned error to a jury instruction defining "serious physical injury," but Division Two did not consider the assignment because he did not preserve it for appeal. However, the court explained that

> [t]he Legislature has not defined the term "serious physical injury" nor is there case law definition. In our view it is neither necessary nor desirable to attempt to do so in a jury instruction. The term speaks for itself, is adaptable to the type of injury in issue and permits argument both pro and con. The jury is usually told it may rely upon common sense and the "common experience of mankind." Judges and lawyers are no better able to explain such ordinary terms than the jurors themselves.

*Id.* at 638 n.2.

Division One later relied on *Welker*'s analysis in *Taitt*, 93 Wn. App. at 791. In

14

*Taitt*, the court considered the definition of "serious physical injury" when deciding whether the true facts doctrine required charging Mr. Taitt with first degree rape. *Id.* The court explained that, "[w]hile [the statute] defines 'physical injury,' neither the Legislature nor case law has provided a definition for 'serious' physical injury. Division Two of this court has noted that leaving the definition of 'serious' to the trier of fact is consistent with legislative intent . . . . And we agree." *Id.* (footnotes omitted) (quoting *Welker*, 37 Wn. App. at 638 n.2).

Based on *Watson*, *Brown*, *Taitt*, and *Welker*, we conclude that the trial court was not required to define "serious physical injury." The court correctly defined the technical term "physical injury" and allowed the jury to determine for itself the meaning of the nontechnical term "serious." RCW 9A.04.110(4)(a); *see Brown*, 132 Wn.2d at 611-12. Moreover, while *Welker* and *Taitt* are not directly on point, their reasoning is in harmony with the principles that specific statutory definitions must be applied and that the court must define for the jury technical, but not nontechnical terms. *See Watson*, 146 Wn.2d at 954-55; *Brown*, 132 Wn.2d at 611-12.

The court did not lower the burden of proof.

*Admissibility—Gang-Related Evidence*

Mr. Hernandez Garcia next argues that the trial court erred by admitting gang-related evidence. Specifically, he contends the testimony of Officers Lipp and King was admitted in violation of the Fifth and Fourteenth Amendments. He also contends that the testimony of Officer King, Officer Lipp, and Detective Abarca was so prejudicial that it should have been suppressed.

FIFTH AMENDMENT. An officer must give a *Miranda* warning before a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). There is no dispute that Officers Lipp and King did not give Mr. Hernandez Garcia a *Miranda* warning before questioning him and that Mr. Hernandez Garcia was in custody. The issue is whether the questioning constituted an interrogation.

Whether questioning by corrections officers constitutes an interrogation is a question of fact that we review under the clearly erroneous standard. *State v. Denney*, 152 Wn. App. 665, 671, 218 P.3d 633 (2009). A decision is clearly erroneous if we are "'left with a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *State v. Handley*, 54 Wn. App. 377, 380, 773 P.2d 879 (1989), *aff'd*, 115 Wn.2d 275, 796 P.2d 1266 (1990)).

A *Miranda* warning should be given "whenever a person in custody is subjected to

either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Routing booking questions rarely constitute interrogation. *Denney*, 152 Wn. App. at 671. Whether they constitute interrogation ultimately depends on whether the officer should have known that the questions were "reasonably likely to elicit an incriminating response." *Denney*, 152 Wn. App. at 671. The focus of that test is the suspect's perception. *Innis*, 446 U.S. at 301. In addition, the officer's subjective intent and the connection between the crime charged and the question asked are probative. *Denney*, 152 Wn. App. at 671-72.

In *Denney*, a routine booking question constituted interrogation when it was directly probative of the crime charged. *Denney*, 152 Wn. App. at 673-74. In that case, Ms. Denney was arrested on suspicion of unlawful possession of morphine. *Id.* at 667. Jail personnel asked Ms. Denney whether she had taken any drugs in the last 72 hours and she replied that she had taken morphine. *Id.* at 668. The appellate court concluded that question constituted interrogation because it invited Ms. Denney to comment directly on the charge against her. *Id.* at 673-74.

Mr. Hernandez Garcia argues that his situation is akin to that in *Denney*. But here the trial court reasoned that the questions were not directly probative of the crime charged. This was because Officers Lipp and King were unaware of whether the crimes

were gang-related. Moreover, Mr. Hernandez Garcia's perception, which is the focus here, was that the questions were only for housing purposes. Under these circumstances, we cannot conclude that the trial court committed clear error by admitting the statements made to Officers King and Lipp.

FOURTEENTH AMENDMENT DUE PROCESS. Alternatively, Mr. Hernandez Garcia argues that using the statements violated his Fourteenth Amendment right to due process. He reasons that it was fundamentally unfair to tell him that his answers would be used only for housing purposes, but later use them against him. He relies on *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *Johnson v. United States*, 318 U.S. 189, 63 S. Ct. 549, 87 L. Ed. 704 (1943). However, those cases hold that it is fundamentally unfair to use a defendant's silence against him. *Doyle*, 426 U.S. at 618 (using post-*Miranda* silence for impeachment violated due process); *Johnson*, 318 U.S. at 195-96 (supporting an adverse inference that invocation of Fifth Amendment right violated due process). They do not address the facts here.

ER 403. Finally, Mr. Hernandez Garcia contends that the testimony of Officer Lipp, Officer King, and Detective Abarca had a prejudicial danger that substantially outweighed its probative value. But because Mr. Hernandez Garcia does not cite to any legal authority to support his argument, we need not consider it. *See Buechler v.*

18

*Wenatchee Valley Coll.*, 174 Wn.2d 141, 155 n.4, 298 P.3d 110 (2013); RAP 10.3(a)(6).[2]

The court properly admitted the gang-related evidence.

*Jury Instructions—Aggravating Circumstance*

Next, Mr. Hernandez Garcia argues that the trial court improperly allowed the jury

to consider whether he committed the drive-by shootings "with intent to directly or

indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a

criminal street gang, its reputation, influence, or membership." CP at 112. He contends

that it was improper because RCW 9.94A.537(4) states that "[e]vidence regarding any

facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall

be presented to the jury during the trial of the alleged crime," but the aggravating factor at

issue here is not listed in (a) through (y).

This contention presents an issue of statutory interpretation that we review de

novo. *State v. Christensen*, 153 Wn.2d 186, 194, 102 P.3d 789 (2004). The purpose of

statutory interpretation is to discern the legislature's intent. *Id.* To do that, this court

---

[2] Even if the argument was supported, the gang evidence was properly admitted. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. Gang evidence is so prejudicial that there must be a nexus between the gang evidence and the charged crimes before the gang evidence is admitted. *State v. Embry*, 171 Wn. App. 714, 772, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005 (2013). There was a nexus here because the State had to present gang evidence to support two gang-related aggravating factors.

looks first at the plain language of the statute. *Id.* If the statute's meaning is plain on its face, then we must give effect to that plain meaning. *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984). We discern the plain meaning of a statute from "the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

A trial court may impose an exceptional sentence outside the standard range only if it finds that there are substantial and compelling reasons to do so. RCW 9.94A.535. RCW 9.94A.535(3) sets forth "Aggravating Circumstances—Considered by a Jury—Imposed by the Court." That provision includes "an exclusive list of factors that can support a sentence above the standard range." *Id.* That list includes the aggravating factor at issue here. RCW 9.94A.535(3)(aa).

Our Supreme Court has concluded that "trial courts lack authority during trial to submit special interrogatories to juries in deviation from the [Sentencing Reform Act of 1981, chapter 9.94A RCW]'s exceptional sentencing procedures." *State v. Davis*, 163 Wn.2d 606, 611, 184 P.3d 639 (2008). The Sentencing Reform Act requires that facts supporting aggravating circumstances be found "by procedures specified in RCW 9.94A.537." RCW 9.94A.535(3). RCW 9.94A.537(4) provides that "[e]vidence

20

regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall be presented to the jury during the trial of the alleged crime." Relying on that statute, Mr. Hernandez Garcia contends that the trial court lacked authority to allow the jury to consider the aggravating factor at issue here, which is not listed in (a) through (y).

However, that statute does not address what a jury can and cannot consider. Instead, it addresses whether a jury must consider certain issues at trial or whether it may consider them in a separate proceeding. RCW 9.94A.537(4). It states:

> Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) *shall be presented to the jury during the trial* of the alleged crime, unless the jury has been impaneled solely for resentencing, or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3)(e)(iv), (h)(i), (o), or (t). If one of these aggravating circumstances is alleged, the trial court *may conduct a separate proceeding* if the evidence supporting the aggravating fact is not part of the res geste of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime.

*Id.* (emphasis added). While that provision does not clearly state whether a jury is required to consider RCW 9.94A.535(3)(aa) at trial, it does not give or deprive the court the authority to submit RCW 9.94A.535(3)(aa) to a jury.

RCW 9.94A.535 clearly provides that a jury may consider the aggravating

21

circumstances at issue here. The trial court correctly allowed the jury to consider them.

*Sufficiency of the Evidence—Aggravating Factor*

Next, Mr. Hernandez Garcia contends that there is insufficient evidence to support

the jury's finding that he committed the drive-by shooting "with intent to directly or

indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a

criminal street gang its reputation, influence, or membership." CP at 118-20; *see*

RCW 9.94A.535(3)(aa). We review findings that support an exceptional sentence for

substantial evidence. *State v. Moreno*, 173 Wn. App. 479, 495, 294 P.3d 812 (2013).

Because the aggravating factor at issue is relatively new, there is little guidance

from case law. In cases addressing a similar gang-related aggravating factor, this court

has held that expert testimony about generalized gang motivations was insufficient. *State

v. Bluehorse*, 159 Wn. App. 410, 429, 248 P.3d 537 (2011). Rather, there must be some

evidence of the defendant's actual gang-related motivation behind the crime charged. *Id.*

at 428.

Mr. Hernandez Garcia argues that the facts here are akin to those in *Bluehorse*. In

*Bluehorse*, Crips gang members did a drive-by shooting at the house of a rival Blood

gang member named Francis. *Bluehorse*, 159 Wn. App. at 416. At the time of the

shooting, Mr. Bluehorse was in a particular sport utility vehicle associated with his gang

and somebody yelled out a Crip-related phrase before the shooting. *Id.* at 416-17. For a period several months before the shooting, Francis and Mr. Bluehorse exchanged gang hand signs, particularly when Mr. Bluehorse walked in front of Francis's house. *Id.* at 418. An expert testified that gang members must maintain their status by retaliating against gang members who encroach on their territory and disrespect their gang by making the hand signs of their own gang in rival territory. *Id.*

The Court of Appeals reversed Mr. Bluehorse's gang aggravating factor because the exchange of gang signs several months prior was the only evidence of gang-related motivation aside from generalized expert testimony. *Id.* at 430. The court explained that

> [t]he State presented no evidence that Bluehorse announced a rival gang
> status contemporaneously with the shooting or that he had recently
> confronted and been disrespected or provoked by rival gang members,
> which would . . . give rise to a contemporaneous gang requirement or desire
> to retaliate. Further, the State presented no evidence that Bluehorse made
> any statements that he wanted to advance his position in a gang or
> committed the drive-by shooting for reasons related to gang status.

*Id.* at 430-31 (footnote omitted).

Mr. Hernandez Garcia argues that "if there was insufficient evidence of gang motivation in *Bluehorse*, there certainly was [insufficient evidence] here." Br. of Appellant at 26-27. He reasons that there was far more evidence of gang relation in *Bluehorse* because Mr. Bluehorse, unlike Mr. Hernandez Garcia, was the shooter, rode in

a car associated with his gang, wore clothes associated with his gang, and somebody in his car yelled something gang related before the shooting.

However, that comparison is unhelpful because it confuses the issues of gang membership and gang motivation. The facts cited by Mr. Hernandez Garcia are mostly proof that Mr. Bluehorse was a gang member and not proof of his intent. There is no dispute that Mr. Hernandez Garcia is not a gang member. The issue here is whether Mr. Hernandez Garcia intended "to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang . . . its reputation, influence, or membership." RCW 9.94A.535(3)(aa). RCW 9.94A.535(3)(aa) does not require gang membership.

*Moreno* is the only case that addresses the aggravating factor at issue here. In *Moreno*, this court concluded that there was sufficient evidence to support the aggravating factor when Mr. Moreno committed what appeared to be a random act of violence against a nongang member. *Moreno*, 173 Wn. App. at 495. An expert testified that the Norteños and Sureños were rivals, there was usually a specific reason for encroaching on rival territory, and gang members often commit random crimes as a way to maintain or improve their status within the gang. *Id.* at 497. Evidence also showed that Mr. Moreno had ties to the Norteños gang, he and his cohorts were in Sureños

territory, and somebody in Mr. Moreno's car yelled out a gang-related phrase moments before the shooting. *Id.* at 496-97. That evidence in connection with the expert testimony was sufficient to support the inference that Mr. Moreno intended to advance his position in his gang by shooting at the pedestrian. *Id.* at 497.

Here, like in *Moreno*, there is sufficient evidence for the jury to infer that Mr. Hernandez Garcia intended to indirectly cause a benefit or advantage to the membership of a criminal street gang. Regarding Mr. Mendez, the evidence showed that he was a Little Valley Locos member and that the associate of a rival gang broke the windshield of a car in which Mr. Mendez was riding the day before the shooting. Detective Abarca's testimony suggested that Mr. Mendez would have wanted to seek revenge for the broken windshield to maintain respect among fellow gang members. Regarding Mr. Hernandez Garcia, the evidence showed that he was a friend of Mr. Mendez, knew that Mr. Mendez was a Little Valley Locos member, and drove with three Little Valley Locos members riding as passengers. It also showed that, during that drive, his lights were off, he slowed down in front of the Moreno Gonzalez residence, and he sped up once Mr. Mendez fired. From that evidence, the jury could have inferred that Mr. Hernandez Garcia intended to help Mr. Mendez carry out a retaliatory drive-by shooting.

Substantial evidence supported the jury's finding.

25

*Judgment and Sentence—Clerical Error*

Finally, the parties agree that the judgment and sentence contains a clerical error that must be corrected.

RCW 9.94A.535(3)(s) provides that a sentence above the standard range may be imposed if a jury finds that "[t]he defendant committed the offense to obtain or maintain his or her membership or to advance his or her position in the hierarchy of an organization, association, or identifiable group." Prior to trial, the State alleged that Mr. Hernandez Garcia had committed the drive-by shooting to obtain or maintain his membership or advance his position in a gang. However, the State conceded that it had not presented evidence to support such a finding and the jury did not consider it. Nevertheless, the judgment and sentence indicates that Mr. Hernandez Garcia was found guilty by a jury verdict of drive-by shooting under RCW 9.94A.535(3)(s).

A trial court may correct a clerical error at any time. CrR 7.8(a). A clerical error is an error that, when corrected, "correctly convey[s] the intention of the court based on other evidence." *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). On appeal, the remedy for a clerical error in a judgment and sentence is to remand the case so that the trial court can correct the error. *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005). Accordingly, this case should be remanded so that the

26

No. 30555-4-III
*State v. Hernandez Garcia*

trial court can correct Mr. Hernandez Garcia's judgment and sentence.

We affirm the convictions and remand to correct the clerical error in the judgment

and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____     _____
Korsmo, C.J.                          Siddoway, J.

27