[No. 10606-3-III.    Division Three.    March 10, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER JENSEN WILLIS, *Appellant*.

*George P. Trejo* and *Contreras-Trejo & Trejo,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert R. Northcott, Deputy,* for respondent.

THOMPSON, J. — Peter Jensen Willis appeals his conviction for taking a motor vehicle without the owner's permission. RCW 9A.56.070. He contends the court should have suppressed statements he made to his community corrections officer, who interviewed him in jail without advising him of his *Miranda*[1] rights. He was being held on unrelated other charges. We reverse and remand.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

At the suppression hearing, Terry Antles testified he is the community corrections officer for Mr. Willis. He saw Mr. Willis in July 1989, immediately after Mr. Willis had been released from prison. After that meeting, Mr. Antles did not see Mr. Willis until October 6, 1989, when he went to the Yakima jail to talk to him following his confinement on burglary and third degree assault charges. Mr. Antles testified his purpose in talking with Mr. Willis was to learn about Mr. Willis' activities in the community since they last met in July. He interviewed Mr. Willis in his single-person cell. Both of them sat on the bed, with a distance of about 3 feet between them. He did not advise Mr. Willis of his *Miranda* rights.

Mr. Antles asked Mr. Willis if he had been using drugs when he was arrested on the burglary and assault charges. Mr. Willis said "yes", and Mr. Antles asked how he supported his drug habit. Mr. Willis replied he had been doing a little bit of everything. Mr. Antles asked him if he could be more specific. Mr. Willis said he had been selling marijuana, ripping people off, and stealing cars. Mr. Antles again asked him to be more specific. Mr. Willis said he remembered stealing a 1988 red Nissan truck, resulting in this conviction, and taking a stereo, Fuzzbuster, speakers, and some money out of it. According to Mr. Antles, the interview was conducted in a normal, conversational tone of voice. Mr. Willis testified Mr. Antles was upset during the interview, and "hounded" him.

The court held Mr. Antles was not required to give Mr. Willis *Miranda* warnings before interviewing him. It also concluded the statements made by Mr. Willis were voluntary and obtained without coercion. It therefore denied the motion to suppress. During trial Mr. Antles testified to his conversation with Mr. Willis. Mr. Willis was subsequently convicted by a jury.

■ *Miranda* warnings must be given before custodial interrogations by agents of the State; otherwise, the statements obtained are *presumed* to be involuntary. *State v. Sargent*, 111 Wn.2d 641, 647-48, 762 P.2d 1127 (1988). The

State concedes Mr. Willis was in custody.[2] The issues on appeal are whether the interview was an interrogation, and whether Mr. Antles was an agent of the State.

■ In *Sargent*, at 650, the court cited the United States Supreme Court's definition of "interrogation" for Fifth Amendment purposes:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

(quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980)). *Sargent* held there was no question a probation officer's statements amounted to interrogation under the *Innis* standard. The officer asked the defendant "Did you do it?" The court commented: "This is not the functional equivalent of interrogation — it *is* interrogation". *Sargent*, at 650.

The State attempts to distinguish *Sargent*, pointing out that the probation officer there questioned the defendant about the specific case for which he was in jail. Here, Mr. Antles had no idea about any specific crime that might have been committed other than the assault and burglary for which Mr. Willis was in custody. However, the focus of the United States Supreme Court's definition of "interrogation" is on the defendant's perception, not the officer's intent. *Innis*. When Mr. Antles' words and actions and requests for more detail are viewed in context, it is apparent the responses sought would in all likelihood be incriminating.

---

[2]In *State v. Post*, 118 Wn.2d 596, 826 P.2d 172 (1992), the Washington Supreme Court held a psychologist's interview of a defendant who was on work release did not occur in a custodial setting. Thus, *Miranda* warnings were not required. *Post*, at 606-07. The court specifically stated at page 606: "The record does not indicate the location of the 1980 interview". Here, Mr. Willis was in jail, locked in his cell, when Mr. Antles interviewed him. In *Sargent*, the Supreme Court held at page 649 that the defendant "was unquestionably in custody", based on the facts he was in jail and locked in an interview booth.

Thus, the session fits the *Innis* definition of an "interrogation".

The next question is whether Mr. Antles was acting as an agent of the State when he interviewed Mr. Willis. In *Sargent*, at 652, the Washington Supreme Court held that a probation officer who had been assigned to prepare a sentencing statement for the superior court clearly became an officer of the State. The State urges this court to limit *Sargent's* holding to its facts, because the probation officer there acted at the request of a judge. Our review of cases from other jurisdictions indicates such a narrow application is not warranted.

Three United States Supreme Court cases touch on the *Miranda* rule's application to questioning by nonpolice officials. *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984); *Estelle v. Smith*, 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981); *Mathis v. United States*, 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503 (1968). In *Murphy*, the Court decided warnings were not necessary during the course of a noncustodial probation or parole interview. While such interviews may have as their principal purpose the obtaining of incriminating information from the defendant, the Court concluded they are not custodial since the time of the interview is usually agreed upon in advance and conducted in known surroundings. *Murphy*, at 432. The Court specifically noted at page 429 n.5 that "[a] different question would be presented if he had been interviewed by his probation officer while being held in police custody . . .". In *Estelle*, at 466, the Court held the statements of a defendant during a jailhouse interview were not admissible to assist the State's efforts to obtain the death penalty. The defendant made the statements to a court appointed psychiatrist without first receiving advice of his *Miranda* rights. In *Mathis*, the Court held that *Miranda* applied to an IRS investigator's questions to a jailed defendant.

Several federal and state courts have directly addressed whether custodial interrogation by a probation or parole

officer is governed by *Miranda*. *See* 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.10, at 543 (1984). These courts cite the psychological pressure bearing on a defendant to answer his probation or parole officer's questions, and conclude that statements made in these situations should be presumed involuntary absent warnings, just as they are in the case of police interrogations.

For example, in *State v. Roberts*, 32 Ohio St. 3d 225, 231, 513 N.E.2d 720, 725 (1987), the court upheld the trial court's refusal to admit statements made by an in-custody defendant to his probation officer because *Miranda* warnings were not given. The court quoted *Marrs v. State*, 53 Md. App. 230, 233, 452 A.2d 992, 993-94 (1982):

> It seems to us that an accused, whose essential obligation it is to 'report to' and 'answer questions posed by a probation officer,' *United States v. Rea*, 678 F.2d 382 (2d Cir. 1982), is under even heavier psychological pressure to answer questions put by his probation officer, a figure of both authority and trust.

*Roberts*, at 230. Similarly, the Fifth Circuit stated in *United States v. Deaton*, 468 F.2d 541, 544 (5th Cir. 1972), *cert. denied*, 410 U.S. 934 (1973):

> We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose. But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior *Miranda* warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer.

*See also State v. Magby*, 113 Ariz. 345, 349, 554 P.2d 1272, 1276 (1976); Annot., *What Constitutes "Custodial Interrogation" Within Rule of* Miranda v Arizona *Requiring That Suspect Be Informed of His Federal Constitutional Rights Before Custodial Interrogation*, 31 A.L.R.3d 565, § 28[a], at 672-73 (1970).

█ We agree that *Miranda*'s underlying rationale that compulsion is inherent when police questioning occurs in custodial surroundings is equally applicable to a corrections officer's questioning of a jailed defendant. The fact Mr. Antles was not acting at the request of either the court or

the prosecution is of no consequence. The United States Supreme Court has recognized the probation officer's allegiance is due the State, not the defendant.

> [He] is the employee of the State which seeks to prosecute the alleged offender. He is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers. He owes an obligation to the State, notwithstanding the obligation he may also owe the [individual] under his supervision.

*Sargent*, at 652 (quoting *Fare v. Michael C.*, 442 U.S. 707, 720, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979)). There is nothing in this case which points to a contrary conclusion and suggests Mr. Antles at any point placed Mr. Willis' interest over those of the State in the performance of his duties. Whether he was acting in behalf of the prosecution or the court or, instead, acting in his role as community corrections officer, did not lessen the pressure on Mr. Willis to answer.

We therefore hold the court erred when it admitted the testimony of Mr. Antles concerning Mr. Willis' admissions that he took the vehicle in question.

There may be sufficient evidence other than that provided through Mr. Antles to support charges against Mr. Willis. *See State v. Wethered*, 110 Wn.2d 466, 473-74, 755 P.2d 797 (1988) (evidence is admissible even if discovered through a statement obtained from a defendant in violation of *Miranda*, so long as the statement was obtained without use of coercive tactics).

We reverse Mr. Willis' conviction and remand to the trial court for retrial or dismissal, depending on the State's ability to prove its case without the statements to Mr. Antles.

SHIELDS, C.J., and MUNSON, J., concur.