[No. 37529-0-II.   Division Two.   August 25, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. VIRGINIA LYNN DENNEY, *Appellant*.

*John A. Hays*, for appellant.

*Susan I. Baur, Prosecuting Attorney*, for respondent.

¶1 Penoyar, J. — Police arrested Virginia Lynn Denney for shoplifting. She was subsequently charged with third

degree theft and unlawful possession of a controlled substance (morphine). During a CrR 3.5 hearing, the trial court admitted statements Denney made that she took a morphine tablet the day she was arrested. The trial court granted Denney's request to instruct the jury on the defense of unwitting possession. A jury found Denney guilty of third degree theft[1] and unlawful possession of morphine.[2] On appeal, Denney argues that the trial court abused its discretion by admitting her prior statements to jail employees. Additionally, Denney claims that defense counsel's proposed jury instruction on unwitting possession constituted ineffective assistance of counsel. Because the trial court erred by admitting her prior statements, we reverse the possession conviction.

## FACTS

¶2 On June 18, 2007, Olympic Drug store manager David Look contacted Denney after she triggered a store exit alarm. After several attempts to determine what was setting off the alarm, Look took Denney to the back room where he discovered an unpurchased package of nasal spray in Denney's bag. Although the box was empty, Look located the spray bottle nearby. As Look continued to search Denney's bag, he found several pills. An on-site pharmacist identified the pills as morphine tablets, and Look contacted the Longview Police. Officer Davis arrived and read Denney her *Miranda*[3] warnings. Denney stated that she understood her rights and chose to remain silent. Davis transported her to the Longview Police Department. At the Cowlitz County Jail, Davis turned Denney over to jail personnel but remained on scene pending completion of the booking process and medical questionnaire, according to county policy.

¶3 Jail personnel administered a standard questionnaire to determine if Denney could be safely booked into the jail

---

[1] In violation of RCW 9A.56.050.

[2] In violation of RCW 69.50.4013.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

or if they should transfer her to a medical facility. The questionnaire included questions regarding drug use. Denney admitted that she had taken one morphine tablet that day. Later, Jenny O'Neil, a jail employee, contacted Denney to complete a bail survey to make bail recommendations to the court. During the survey, O'Neil asked if Denney "ha[d] any trouble with drug dependency or [had used] drugs within the last 72 hours." Denney answered, "Morphine." Report of Proceedings (RP) at 23.

¶4 The State charged Denney with one count of third degree theft and one count of unlawful possession of a controlled substance (morphine). Prior to trial, Denney requested a CrR 3.5 hearing to determine the admissibility of the statements she made to jail personnel. The State called Davis and O'Neil to testify to the circumstances of Denney's arrest and the context in which jail personnel questioned Denney about her drug use.

¶5 Davis testified that jail personnel administer the medical questionnaire to every inmate and that he is required to "stand by" until the questionnaire is completed. RP at 13. Davis testified that he does not participate in the questionnaire process in any way. He explained that after Denney asked to speak with an attorney, he "respected" her request and did not attempt to speak with her. RP at 18. Davis overheard Denney say she had used morphine that day and made note of her statement in his investigative report.

¶6 O'Neil testified that she interviewed Denney in her cell. She explained that she uses an inmate's admission of drug use to determine whether they pose a risk of flight or if placement in a medical facility rather than a correctional facility is appropriate.

¶7 The State acknowledged that Denney was in custody but argued that the questions were standard booking procedures not an interrogation prohibited by *Miranda*. The State relied on *State v. Walton*, 64 Wn. App. 410, 413-14, 824 P.2d 533 (1992), which held that standard procedural questions asked during inmate booking were

not interrogations under *Miranda*. The State noted that the jail used both statements to determine an appropriate placement for Denney, not to aid officers in their investigation. Denney argued that the booking procedures were a covert attempt to solicit "incriminating responses" from her in violation of her *Miranda* rights. RP at 31. Accordingly, Denney asked the trial court to exclude her statements. Additionally, Denney argued that the trial court should exclude the statement under Evidence Rule (ER) 403 as "unduly prejudicial." RP at 33.

¶8  The trial court rejected both Denney's arguments and admitted her statements. In determining that the statements were admissible under ER 403, the trial court noted that Denney's statement that she took morphine the day police arrested her for morphine possession was "highly probative" as to whether she was aware that morphine pills were in her purse. RP at 33. In determining that jail personnel had not obtained the statements in violation of *Miranda*, the trial court relied on *Walton*, which held that statements obtained for medical reasons were not violations of *Miranda*. The trial court emphasized the routine nature and practical purposes of the booking and bail questionnaires.

¶9  At trial, both Davis and O'Neil testified that Denney admitted to using morphine within the last 72 hours. In her testimony, Denney denied telling anyone she took morphine. She explained that she found the pills in the back seat of her mother's car after driving one of her mother's clients to the grocery store. She testified that she put the pills in her purse because she intended to return them to the owner and that was the last time she "[t]hought about the pills." RP at 83. Additionally, she testified that at the time of her arrest a few weeks later, she had not located the owner of the pills.

¶10  Trial began on March 10, 2008. Denney proposed a jury instruction of unwitting possession for the possession of morphine charge. The trial court granted the requested

instruction over the State's objection. Denney's counsel discussed unwitting possession in his closing arguments.

¶11 The jury found Denney guilty on both counts. Denney now appeals.

## ANALYSIS

¶12 Denney argues that the trial court erred in admitting her statements to the booking officer and O'Neil because they obtained them in violation of her *Miranda* rights. She reasons that because "the [booking] officer was asking questions that any reasonable person would know could prove incriminating to a person being booked on a charge of possession of illegal drugs" and "[Davis] stood by . . . so he could hear the answers to these questions," her responses to the booking questionnaire was the result of an impermissible custodial interrogation.[4] Appellant's Br. at 12.

¶13 The State argues that because both the booking questionnaire and the bail survey were routine background questions necessary for identification and assisting the judge in setting bail, they fall within the routine question exception to *Miranda*. The State is correct that Washington courts recognize that "routine booking procedures . . . rarely elicit an incriminating response" and, thus, may be exempt from *Miranda* requirements. *State v. Wheeler*, 108 Wn.2d 230, 238, 737 P.2d 1005 (1987). However, the State is incorrect in presuming that the standard nature of the booking and bail questions shielded the questions from *Miranda* requirements. The State's arguments fail because, regardless of their routine nature, the questions in this case were reasonably likely to produce an incriminating response. Thus, the trial court erred when it admitted Denney's custodial statements and we reverse.

---

[4] It is unclear from her brief if Denney is challenging the admissibility of only the statements made at booking or both her booking and bail survey statements. We assume Denney challenges the admission of both statements.

¶14 State agents must give *Miranda* warnings before custodial interrogations. *Miranda v. Arizona*, 384 U.S. at 444. In this case, the State concedes that Denney was in custody when the jail service officer asked about her drug use and that the service officers were state agents. The sole question on appeal is whether the trial court's determination that the booking procedure and bail questionnaire were not interrogations was clearly erroneous. The trial court's determination that the exchanges between Denney and jail officers were not custodial interrogations subject to *Miranda* was factual, and we review that decision under a "clearly erroneous standard." *Walton*, 64 Wn. App. at 414. Under a clearly erroneous standard, we will not overturn a finding of the lower court unless we are "left with a definite and firm conviction that a mistake has been committed." *State v. Handley*, 54 Wn. App. 377, 380, 773 P.2d 879 (1989).

¶15 Courts have recognized that routine questions asked during the booking process may not be "interrogations" under *Miranda* and *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). The routine question exception recognizes that such questions rarely elicit an incriminating response and do not involve the " 'compelling pressures which . . . undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely.' " *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) (quoting *Miranda*, 384 U.S. at 467); *Wheeler*, 108 Wn.2d at 238. This limited exception to *Miranda* allowing background biographical questions necessary to accomplish booking procedures does not encompass all questions asked during the booking process.

¶16 When determining if the routine question exception applies, the court asks if the questioning party should have known that the question was reasonably likely to elicit an incriminating response. *State v. Willis*, 64 Wn. App. 634, 637, 825 P.2d 357 (1992). This test is objective. *Booth*, 669 F.2d at 1238. The subjective intent of the questioning agent is relevant but not conclusive. *Booth*, 669 F.2d at 1238. The

relationship between the question asked and the crime suspected is highly relevant. *Booth*, 669 F.2d at 1238.

¶17 In *State v. Sargent*, the Washington Supreme Court held that a probation officer's questions amounted to custodial interrogation in violation of *Miranda*. 111 Wn.2d 641, 650, 762 P.2d 1127 (1988). The officer asked the defendant, "Did you do it?" *Sargent*, 111 Wn.2d at 650. The court commented, "This is not the functional equivalent of interrogation—it *is* interrogation." *Sargent*, 111 Wn.2d at 650.

¶18 The likelihood of incrimination need not be as obvious as the question in *Sargent*. In *Willis*, Division Three of this court determined that the routine question exception did not apply to specific questioning conducted by a probation officer. 64 Wn. App. at 637. In that case, a probation officer asked Willis, who was in custody on unrelated charges, specific questions about how he supported his drug habit. In response, Willis admitted not only to "ripping people off[ ] and stealing cars" but to stealing a particular truck. *Willis*, 64 Wn. App. at 636. The State later charged Willis with taking a motor vehicle without permission and relied on his statements to the probation officer in its case in chief. Division Three noted that the probation officer had no specific knowledge that police officers suspected Willis of committing other crimes but emphasized that the defendant's perception of an interrogation, not the questioner's intent, is determinative. *Willis*, 64 Wn. App. at 637.

¶19 Conversely, Washington courts will not find that standard questionnaires are interrogations under *Miranda* when they are administered for routine purposes such as identification and are unlikely to produce an incriminating response. In *Walton*, Division Three of this Court held that the routine question exception applied to questions asked by jail personnel for the purposes of establishing the defendant's identity and establishing bail. 64 Wn. App. at 414. In that case, a booking officer and a pretrial investigator asked the defendant for his address. *Walton*, 64 Wn. App. at 414. The defendant later argued that his responses were inadmissible under *Miranda* when the State relied on

the address he gave to the officers to establish constructive possession for drugs found at that address. *Walton*, 64 Wn. App. at 413. Division Three disagreed, noting that the "routine background questions necessary for identification and to assist a judge in setting reasonable bail . . . are precisely the routine statements which are admissible, even though they ultimately prove to be incriminating." *Walton*, 64 Wn. App. at 414.

¶20 Denney argues that we should find that the trial court's determination that her statements were admissible under the routine questioning exception was clearly erroneous because the questions were directly relevant to the charges against her and invited an incriminating response. We agree.

¶21 Jail personnel should have known the question was reasonably likely to produce an incriminating response. Denney had been arrested for morphine possession, and both the booking and bail questionnaires asked her if she had used an illegal drug in the last few days. Similar to the question in *Sargent*, the questions in this case invited an answer that would be a direct admission of guilt.

¶22 The State places great emphasis on the legitimate purpose of the questionnaires and the good faith of the personnel administering them. While the State is correct that the questionnaires are important in ensuring inmate safety and proper pretrial release and that there is no indication that personnel sought an incriminating response, those factors are not determinative. A legitimate question, asked with good intentions, will still violate a defendant's *Miranda* rights if it is reasonably likely to produce an incriminating response. Additionally, the legitimate purposes of the questionnaires are advanced by the exclusion of incrimination responses. Jail personnel will only be able to assess the defendants' medical needs accurately if the defendants know that their responses will not later be used against them.

¶23 The questions during the booking process and the bail survey were reasonably likely to produce an incrimi-

nating response because they invited Denney to comment directly on the charges against her. We hold that the trial court erred when it admitted Denney's custodial statements. We reverse Denney's conviction for possession.

VAN DEREN, C.J., and BRIDGEWATER, J., concur.