# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) DIVISION ONE |
| Respondent, | ) |
| | ) No. 68972-0-I |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| TYLER T. MARX, | ) |
| | ) |
| Appellant. | ) FILED: October 14, 2013 |
| | ) |

DWYER, J. — Tyler Marx was convicted of violating RCW 66.44.270(2)(a), minor in possession of alcohol. He appeals, contending that his utterance to a police officer prior to being read his Miranda[1] rights should not have been admitted at trial.[2]

We conclude that Marx's Fifth Amendment rights were not violated by the trial court's admission of his pre-Miranda utterance. The trial court found as a fact that his utterance was voluntary and spontaneous. This finding is supported by substantial evidence in the record, and, thus, is a verity on appeal.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Marx also notes that the trial court failed to enter written findings of fact and conclusions of law in denying his suppression motion. CrR 3.5(c) (After a hearing to determine the admissibility of a confession, the trial court "shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."). He requests that we remand for entry of written findings of fact and conclusions of law. However, although failure to submit written findings of fact and conclusions of law constitutes error, such error is "harmless where the trial court's oral findings are sufficient to permit appellate review." State v. Smith, 67 Wn. App. 81, 87, 834 P.2d 26 (1992), aff'd on other grounds, 123 Wn.2d 51, 864 P.2d 1371 (1993); see also State v. Cunningham, 116 Wn. App. 219, 226, 65 P.3d 325 (2003); State v. Miller, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998). A "failure to draft formal written findings and conclusions, while clearly not recommended, does not necessitate reversal." Smith, 67 Wn. App. at 87.

Furthermore, no interrogation occurred prior to the reading of the Miranda warnings, as Marx's utterance was voluntary and spontaneous and the officer could not have known that the officer's statements to Marx would elicit an incriminating response. Miranda warnings are not required when there is no interrogation; thus, the trial court properly admitted Marx's pre-Miranda utterance. Therefore, we affirm.

I

In the evening on January 26, 2011, Renton police officer Michael Thompson witnessed Marx peering into the windows of a car parked in the Sam's Club parking lot on South Brady Way. Thompson was sitting in his patrol car, which was parked in the Sam's Club parking lot, and he knew that the car into which Marx looked did not belong to Marx. He then watched Marx walk over to a light pole and climb onto its cement base. Marx "started playing with the sign that was attached to [the] pole" by "tugging" and "pulling" on it.

Thompson "illuminated" Marx with his vehicle's "spotlight to get a better view of what he was actually doing with the sign." Marx then "[g]ot down from the light pole and started jogging towards Talbot Road," so Thompson "turned off [his] spotlight and went over to go contact" Marx. When Thompson got to the road, he saw Marx walking away and shined his spotlight on him again.

Marx then "stopped and turned around and began walking towards [Thompson]." Thompson had not ordered Marx to stop, but he did have his "headlights and the spotlight on him." As Marx walked toward him, Thompson parked his patrol car, stepped out, and walked to the sidewalk to speak with

Marx.

As Thompson approached Marx, he "could smell the obvious odor of intoxicants emanating from his person." This changed Thompson's "reason for speaking with him to a minor in possession" because Marx "looked like a juvenile. He definitely appeared under the age of 18." Marx was sixteen years old at the time.

Thompson observed Marx "putting his hands in his pockets and pulling them out" and Marx "became obviously nervous upon contact." Thompson did not know what was in Marx's pockets and was working alone, so he told Marx "to turn around and . . . placed him [in] handcuffs for [Thompson's] safety." He "asked [Marx] for his name and date of birth." Then Thompson "informed [Marx] of the original reason why [he] was coming to talk to him" and told Marx that "he was being detained" because Thompson "smelled alcohol."

Marx then responded that "he wasn't going to lie, he was on his way home and he was a little bit intoxicated." Thompson "instructed [Marx] to not speak any further and . . . read him his Miranda rights." Thompson testified that when he informs a person of the reason for his detainment or arrest, sometimes the person responds and sometimes the person does not; however, in this case, Thompson "didn't expect" Marx to respond.

Marx "stated he understood his rights" and Thompson did not doubt his state of mind, despite smelling alcohol. Thompson asked Marx "if he would be willing to speak with" Thompson, and Marx said that he would. Thompson did not threaten, force, or promise anything in order to get Marx to talk with him.

Thompson "asked him where he'd been drinking," and Marx replied that "he was at a friend's house and his friend had gotten him drunk."

Thompson did not notice any behavior by Marx of the type that Thompson usually notices when encountering intoxicated persons, such as "poor coordination, usually stumbling, slurred speech, [or] bloodshot" eyes.[3] He did notice that Marx "had mood swings. He would go from argumentative and berating to compliant and apologizing, then back to argumentative and berating." The only sign that Marx had been drinking was the odor of intoxicants, which was "[v]ery strong."

Thompson arrested Marx "[b]ecause he was a juvenile, and the odor of intoxicants was coming from his person, meaning he had consumed it," although he had not observed Marx consuming alcohol or possessing an alcohol container. Based on Marx's admission and mood swings, Thompson believed that Marx had consumed alcohol, but not necessarily that he was intoxicated.

Thompson contacted Marx's father, who came to the scene to pick up his son. While waiting for Marx's father to arrive, and after Thompson had ceased questioning him, Marx stated that Thompson "should be catching more serious criminals" and that he "shouldn't be wasting [his] time because [Marx was] intoxicated."

At trial, Marx moved to suppress his pre-<u>Miranda</u> utterance and post-<u>Miranda</u> admissions under CrR 3.5. The trial court combined the hearing on

---

[3] Marx was also able to climb the light pole base, jump down, run away, and walk back toward Thompson with normal balance and coordination.

Marx's suppression motion with the trial on the substantive minor in possession

case, because of "the short duration of this type of trial." The trial court orally

denied Marx's suppression motion, stating that:

> [T]his is a voluntary statement that he's making in the course of the officer conducting a Terry[4] stop based upon the behaviors that he saw. . . . [T]his remained a Terry stop. It turned into a detention. Accordingly, the statements made prior to the advice of rights were voluntary in nature. From this court's perspective, . . . he was properly advised of his rights and any statements both . . . pre- and post-Miranda are admissible.

The trial court did not enter separate written findings of fact and conclusions of

law regarding the suppression motion, but it did enter written findings of fact and

conclusions of law in the substantive minor in possession case.

In finding Marx guilty of minor in possession, the trial court noted that after

being handcuffed, "the defendant indicates, makes what the court has

determined to be a voluntary statement not based on any interrogation: '. . . I'm a

little intoxicated.'" The trial court continued: "[h]e's then advised of his rights and

indicates in responding to questions he'd been drinking at a friend's house, got

drunk there." The trial court recognized that "[h]e didn't have anything physical in

his possession, so we're really just talking about the odor of alcohol, what that

means." The trial court concluded:

> And the State's position . . . is there's circumstantially enough evidence to support the consumption. Defense says no, no, no, there's not enough there, that the court should not . . . allow the statement of the defendant to influence its determination in this matter, . . . but it is a part of the evidence that the court has before it. And in that sense, I do find that the State has met its burden.

---

[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Counsel for Marx then asked: "[j]ust for purposes of your findings, it's really just odor and admission was sufficient, right, Judge?" The trial court responded that "[i]t is. That's correct."

As to the substantive minor in possession case, the trial court entered findings of fact and conclusions of law. Therein, finding of fact 8 states that Marx "made voluntary and spontaneous statements [s]pecifically saying 'I am not going to lie I'm a little intoxicated.'" Marx appeals his conviction.

## II

Marx contends that his Fifth Amendment rights were violated when the trial court admitted his pre-Miranda utterance at trial. He asserts that because his utterance was elicited during an interrogation, Miranda warnings were required. However, the trial court's factual finding that Marx's pre-Miranda utterance was voluntary and spontaneous is a verity on appeal. Considering that his utterance was voluntary and spontaneous and that Thompson could not have known that his statements would elicit an incriminating response from Marx, no interrogation took place at that time. Because there was no interrogation, Miranda warnings were not yet required. The trial court properly admitted Marx's pre-Miranda utterance. Therefore, we affirm Marx's conviction.

## A

The standard of review "to be applied in confession cases is that findings of fact entered following a CrR 3.5 hearing[5] will be verities on appeal if

---

[5] Although we do not have written findings of fact and conclusions of law specifically addressing CrR 3.5, we have the trial court's written findings of fact and conclusions of law for the

unchallenged; and, if challenged, they are verities if supported by substantial evidence in the record." State v. Broadaway, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

Marx does not challenge the trial court's finding of fact that his pre-Miranda utterance was voluntary and spontaneous.[6] Marx's "failure to assign error to the trial court's findings on the voluntariness of [his] confession will leave them [as] verities on review." Broadaway, 133 Wn.2d at 133. Therefore, as the trial court found,[7] Marx's pre-Miranda utterance was voluntary and spontaneous.

Furthermore, even if Marx had challenged the finding that his utterance was voluntary and spontaneous, it is supported by substantial evidence in the record so it is a verity on appeal. See Broadaway, 133 Wn.2d at 131. Thompson handcuffed Marx for safety purposes, explained to Marx why he was being detained, and stopped Marx from speaking further immediately after the incriminating statement was uttered. Thompson then gave him the Miranda warnings. Thompson did not threaten, bribe, or force Marx to utter the pre-Miranda statement. Moreover, he did not ask Marx about the odor of alcohol.

---

substantive minor in possession case. Because the CrR 3.5 hearing and the minor in possession case both involved the same proceeding, testimony, and questions of fact, the trial court's finding of fact in the minor in possession case is also subject to the Broadaway standard of review. To disregard the trial court's finding of fact, merely because it appears in a written finding for the minor in possession case as a whole rather than for the specific CrR 3.5 suppression issue, and despite its applicability to the Fifth Amendment issue on appeal, would be to put form over function. Thus, the Broadaway standard applies.

[6] Though Marx contends that, under the Fifth Amendment, his utterance was involuntary as a matter of law, he does not assign error to the trial court's finding of fact that his utterance was voluntary and spontaneous.

[7] This court may also rely on the trial court's oral CrR 3.5 ruling. Smith, 67 Wn. App. at 87; see, e.g., State v. Wilson, 144 Wn. App. 166, 183, 181 P.3d 887 (2008). The trial court's oral finding was that "the statements made prior to the advice of rights were voluntary in nature."

Thus, substantial evidence supports the trial court's finding that Marx's statement was voluntary and spontaneous.

B

Because Marx's utterance was voluntary and spontaneous and Thompson could not have known that his statements would elicit an incriminating response from Marx, admitting Marx's pre-Miranda utterance at trial did not violate his Fifth Amendment rights.

Pursuant to the Fifth Amendment of the U.S. Constitution, "Miranda warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004); see also U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."); State v. Unga, 165 Wn.2d 95, 100, 196 P.3d 645 (2008) ("The protection provided by the state [constitutional] provision is coextensive with that provided by the Fifth Amendment."). When these conditions are met, but Miranda warnings are not given, the suspect's "self-incriminating statements . . . are presumed to be involuntary, and to violate the Fifth Amendment." State v. Sargent, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988); accord Heritage, 152 Wn.2d at 214. Such statements must be excluded from the evidence at trial. Miranda, 384 U.S. at 444; State v. Warner, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

Here, the State concedes that Marx was in custody[8] and detained by a police officer, who is an agent of the state; thus, the first and third conditions for requiring Miranda warnings are satisfied. The parties dispute whether the pre-Miranda utterance was made during an interrogation, the second condition.

"[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions," interrogation only occurs pursuant to "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301-02, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); accord Sargent, 111 Wn.2d at 650; State v. Shuffelen, 150 Wn. App. 244, 256, 208 P.3d 1167 (2009).

A trial court's determination that an exchange was an interrogation subject to Miranda is factual and therefore reviewed pursuant to the clearly erroneous standard. State v. Denney, 152 Wn. App. 665, 671, 218 P.3d 633 (2009) (citing State v. Walton, 64 Wn. App. 410, 414, 824 P.2d 533 (1992)). An appellate court will only overturn the trial court's finding if it is "'left with a definite and firm conviction that a mistake has been committed.'" Denney, 152 Wn. App. at 671 (quoting State v. Handley, 54 Wn. App. 377, 380, 773 P.2d 879 (1989)).

---

[8] The trial court ruled that Marx was not in custody, stating that Marx's utterance was made "in the course of the officer conducting a Terry stop" that "remained a Terry stop. It turned into a detention." Case law suggests that a handcuffed suspect still may not be in custody for the purposes of Miranda. See, e.g., Heritage, 152 Wn.2d at 218 (citing Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) ("Washington courts agree that a routine Terry stop is not custodial for the purposes of Miranda" unless a reasonable person would have also felt that his freedom was curtailed to a degree associated with arrest); Cunningham, 116 Wn. App. at 228-29 (the defendant was not in custody and Miranda warnings were not required when an officer detained him in handcuffs for 45 minutes). However, the State does not brief this aspect of the trial court's ruling and explicitly concedes that Marx was in custody.

Here, the trial court's ruling was not clearly erroneous: the evidence supports a finding that the exchange between Marx and Thompson was not an interrogation, as Thompson could not have known that his statements would elicit an incriminating response from Marx. See Sargent, 111 Wn.2d at 650; Denney, 152 Wn. App. at 671. Marx's utterance was voluntary and spontaneous; by its nature, Thompson could not have known that his statements would elicit Marx's incriminating response. Marx's utterance was the kind of "unforeseeable result" that "the police surely cannot be held accountable for." Innis, 446 U.S. at 301-02.

Furthermore, Thompson could not have acted any differently in his interaction with Marx. He noticed Marx acting out of the ordinary and approached Marx to inquire about his behavior. In quick succession, he handcuffed Marx for safety purposes,[9] asked Marx his name and age,[10] and informed Marx of the reason why he was being detained. It would have been untenable for Thompson to have approached Marx, handcuffed him, and said nothing. To do so would have risked escalating the situation and increased the safety hazard posed to both Thompson and Marx: Marx likely would have

---

[9] Handcuffing a suspect for officer safety is permissible. State v. Wheeler, 108 Wn.2d 230, 235-36, 737 P.2d 1005 (1987) (handcuffs are permissible when the police have a legitimate fear of danger during a Terry stop); see Terry, 392 U.S. at 23; cf. State v. Allenby, 68 Wn. App. 657, 659, 661, 847 P.2d 1 (1992) (the defendant's "unexpected" pre-Miranda utterance was voluntary even though the defendant, a juvenile, was handcuffed).

[10] Routine identifying questions are generally not interrogations and therefore do not require Miranda warnings. State v. Kolesnik, 146 Wn. App. 790, 811, 192 P.3d 937 (2008) ("mere investigatory stops are not custodial interrogations requiring a Miranda warning," so a "suspect may be asked to identify himself or to explain his activities without first receiving a Miranda warning"); see Denney, 152 Wn. App. at 671 (statements made in reply to questions that are reasonably likely to produce an incriminating response are not admissible); e.g., Walton, 64 Wn. App. at 414 (asking for the defendant's address for basic identification purposes, when drugs were found at that address, produced "precisely the routine statements which are admissible, even though they ultimately prove to be incriminating").

become frustrated and angry because he had been handcuffed and did not know why. Thompson's actions were not designed to elicit an incriminating response from Marx, nor could he have known that they would, as Marx's utterance was voluntary and spontaneous. The trial court correctly ruled that no interrogation occurred before Thompson read Marx the Miranda warnings.

Because the interrogation element was not satisfied when Marx voluntarily and spontaneously uttered that he was "a little bit intoxicated," Miranda warnings were not required prior to that time. Heritage, 152 Wn.2d at 214. The trial court therefore properly admitted Marx's pre-Miranda utterance at trial. See, e.g., Heritage, 152 Wn.2d at 213, 220.

Affirmed.

We concur: