IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32443-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CURTIS DONN LIEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant. | ) | |

SIDDOWAY, J. — Curtis Lien appeals the trial court's denial of his motion to
suppress his statement admitting ownership of a drug-containing lockbox, made before he
was advised of his *Miranda*[1] rights. The trial court's findings that are supported by the
record do not support its conclusion that the deputy questioning Mr. Lien was not
engaged in a custodial interrogation. We therefore reverse his three convictions for
possession of a controlled substance without prejudice and remand with directions to
grant his motion to suppress the admission.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS AND PROCEDURAL BACKGROUND

A pickup truck driven by Curtis Lien was stopped by deputy sheriffs after it was observed parked on the wrong side of the road in an area plagued by vandalism, illegal dumping, and theft, and the deputy who observed the truck determined that its registered owner had a suspended driver's license and an outstanding felony warrant.

Mr. Lien was not the truck's registered owner. But he proved to have an outstanding warrant of his own (a department of corrections hold). And he, too, lacked a valid driver's license. Deputy Thomas Edelbrock told Mr. Lien he was under arrest on the warrant, but that he would only write him a citation for driving with a suspended license. He handcuffed Mr. Lien.

Mr. Lien had a single passenger who also did not have a driver's license. Efforts were made to telephone the registered owner of the truck to arrange for it to be picked up, but they were unsuccessful. Mr. Lien and his passenger were told the truck would be inventoried and impounded. The passenger was given her purse and, at Mr. Lien's request, she was allowed to take his leather jacket. Deputy Edelbrock then began inventorying other items in the truck.

Deputy Edelbrock saw what proved to be an old, warped lockbox under the driver's seat of the truck. He described it as "look[ing] for all purposes like a book." Report of Proceedings (RP) at 23. He pulled it out from under the seat, opened its cover and saw that underneath the cover was a locked box. He could see inside the box through

2

a corner of its locked lid that he described as "pried or sprung" and that "[didn't] fit well." RP at 24. He saw a clear bag containing a white powder and part of a syringe. He asked Mr. Lien who the lockbox belonged to and Mr. Lien stated it belonged to him. Mr. Lien refused the deputy's request to open the box.

The deputy retained the lockbox and after a search warrant was obtained, it was opened. Its contents included drugs that tested positive as controlled substances. Mr. Lien was charged with one count of possession of a controlled substance (methamphetamine) with intent to deliver and three counts of possession of a controlled substance (cocaine, hydrocodone, and amphetamine). Well before trial, Mr. Lien moved, unsuccessfully, to suppress evidence of the box and its contents.

Just before trial, the court conducted a CrR 3.5 hearing on the State's intention to offer Mr. Lien's statements made to Deputy Edelbrock. The deputy testified to events leading up to his pulling the lockbox out from under the driver's seat of the truck and provided the following testimony relevant to the issue on appeal:

> A      Holding it up as if you're going to read it, it turns out it is a lock box, but it's an old, beat up thing, and the corners of it are pried or sprung. It doesn't fit well.
> Q      When you say it's a lock box, Deputy, was there a place for a key or was it just a metal container?
> A      No, there's as I recall a key lock if you're holding it like a book, in the middle of the right edge.
> Q      And what did you do with that?
> A      Holding it up in a book reading position at the bottom with the shift—I could see a bag and a syringe underneath the hinge—the side edge of the door.

3

Q    Without opening it?

A    I can't open it. It's locked. No.

Q    So how did you see that? Could you describe why—

A    If the book was—if the box was sitting flat like this, whether somebody closed and locked it with those bags in it or if the metal is slightly sprung, it's an older lock box. It's not in mint condition by any means. It's down by the right corner as you hold it like a book. . . .

. . . .

Q    Okay. Then after you discovered the nature of the object of this box, what did you do?

A    After I saw a portion of a syringe in the back with the powder in it, I just closed it.

Q    Did you make any decision as to how you were going to proceed with the disposition of that item?

A    I really didn't know exactly what to do. I didn't say anything to anybody there about what was—about the box.

Q    You mean about the character of what you had seen?

A    This is correct.

Q    Okay. So what did you do with the box at that point?

A    I just held on to it. I ended up asking Curtis whose it was, but I didn't do—had said anything to anybody about what I had seen.

Q    So you asked him whose it was; is that correct?

A    Let me see exactly what I said. *I asked him whose it was, yes.*

Q    And what did he say?

A    *He said it was his.* I then asked him if I could see inside it. He said no, it was his. I couldn't open it.

Q    So what did you do?

A    I just kept the box.

Q    Okay. Subsequently, what happened to the box eventually? Did you put it back in the vehicle or did you take it with you?

A    I still didn't know exactly what was inside it. I put it on property as evidence. I didn't know to be tested we would need a search warrant to get it open.

RP at 24-27 (emphasis added).

At the conclusion of the hearing, the court orally ruled that Mr. Lien's statements were admissible. Findings of fact and conclusions of law were prepared and presented

approximately two months later. They included a conclusion that at the time of Mr. Lien's incriminating statement, "Deputy Edelbrock was not conducting an interrogation but was conducting an inventory which turned into a brief exchange with Mr. Lien, not related to or incident to a criminal investigation." Clerk's Papers (CP) at 201.

At the conclusion of trial, the jury returned guilty verdicts on the three possession charges but was deadlocked on the possession with intent to deliver charge. Before sentencing, Mr. Lien pleaded guilty to possession with intent to deliver methamphetamine, in exchange for which the State asked the court to dismiss two other unrelated outstanding charges. The court imposed a 60+ month sentence on the possession with intent to deliver charge and concurrent sentences of 12+ months on each possession charge. Mr. Lien appeals.

## ANALYSIS

The only issue on appeal is whether the court erred in denying the motion to suppress evidence of Mr. Lien's statement to Deputy Edelbrock. Mr. Lien contends his statement was made in the course of a custodial interrogation and should have been suppressed because he was not given full *Miranda* warnings.

Before turning to that issue, we address two matters that are undisputed. First, Mr. Lien challenges the trial court's finding of fact 19, which he argues implies, given its placement in the trial court's remaining findings, that Deputy Edelbrock asked him about ownership of the box *before*, not *after*, seeing that it contained what appeared to be drugs

5

and related paraphernalia. The State does not dispute Mr. Lien's contention that the deputy saw the contents before asking the question. To the extent the court's findings can be read as stating that the deputy asked about ownership of the box before seeing its suspicious contents, they are not supported by evidence. With the correct sequence of events in mind, we review the trial court's conclusions of law de novo. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 681, 327 P.3d 660 (2014), *cert. denied, Cross v. Wash.*, 135 S. Ct. 1701, (2015).

Second, the State underscores the fact that by entering a guilty plea to the possession with intent to deliver charge, Mr. Lien waived or rendered irrelevant all constitutional violations that occurred before that plea, except any related to the circumstances of the plea or the State's ability to prosecute regardless of factual guilt. Br. of Resp't at 11 (citing *State v. Brandenburg*, 153 Wn. App. 944, 947-48, 223 P.3d 1259 (2009)). Mr. Lien does not appear to disagree; his opening brief urges us "to reverse his convictions for possession of a controlled substance and dismiss the charges." Br. of Appellant at 11. We read his brief as challenging only the three possession convictions.

*Was Mr. Lien's admission of ownership elicited in a custodial interrogation?*

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself, nor be

deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. Article 1, section 9 of the Washington State Constitution similarly protects a defendant's privilege against self-incrimination. WASH. CONST. art. I, § 9 ("No person shall be compelled in any criminal case to give evidence against himself."). "In *Miranda*, the Supreme Court established a conclusive presumption that all confessions or admissions made during a custodial interrogation are compelled in violation of the Fifth Amendment's privilege against self-incrimination." *Cross*, 180 Wn.2d at 682 (citation omitted). The presumption is overcome only by a showing that law enforcement officials informed the suspect of his or her right to remain silent and right to an attorney and that the suspect knowingly and intelligently waived those rights. *Id.* It is undisputed that the State cannot make that showing here.

The right to *Miranda* warnings attaches only when a custodial interrogation begins, however. *State v. Templeton*, 148 Wn.2d 193, 208, 59 P.3d 632 (2002). The State disputes that Deputy Edelbrock's question to Mr. Lien took place in a custodial interrogation. And it argues that since Mr. Lien had been placed under arrest on the DOC warrant before the question was asked, "custodial" should mean more than just the normal restrictions on freedom incident to incarceration. Br. of Resp't at 14 (citing *State v. Warner*, 125 Wn.2d 876, 889 P.2d 479 (1995)).

The State points out that Mr. Lien was not in custody for a *controlled substance violation* at the time he was asked about ownership of the lockbox. But it is well settled

7

that "nothing in the *Miranda* opinion . . . calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Mathis v. United States*, 391 U.S. 1, 4-5, 88 S. Ct. 1503, 20 L. Ed. 2d 381 (1968) (overturning tax fraud convictions resulting from incriminating statements made when a defendant was interviewed by a revenue agent while serving time on unrelated charges); *accord State v. LaRue*, 19 Wn. App. 841, 845, 578 P.2d 66 (1978). Nonetheless, cases like *Warner* hold that where an offender is incarcerated, the fact of incarceration is not enough to make every question asked by state agents "custodial" for *Miranda* purposes.

In analyzing the State's argument that this case presents a "custody within custody" situation that requires more than the fact of his arrest, we find most helpful the Supreme Court's 2012 decision in *Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181, 182 L. Ed. 2d 17. In that case, the Court reversed a decision of the Sixth Circuit Court of Appeals holding that a prisoner is always in custody within the meaning of *Miranda* if he or she is taken aside and questioned about events that occurred outside the prison walls. The Supreme Court held, instead, that when a prisoner is questioned he or she may or may not be in custody: the determination of custody should focus on all of the features of the interrogation. 132 S. Ct. at 1192. And it depends on whether incarceration exerts the coercive pressure that *Miranda* was designed to guard against. *Id.* at 1188 (citing *Maryland v. Shatzer*, 559 U.S. 98, 112, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010)).

8

"*Miranda* is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.'" *Shatzer*, 559 U.S. at 112 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)).

*Howes* explained that one "strong ground" for concluding that imprisonment alone is not enough to create a custodial situation is that "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest." 132 S. Ct. at 1190. "'Interrogated suspects who have previously been convicted of crime *live* in prison.'" *Id.* at 1191 (emphasis added) (quoting *Shatzer*, 559 U.S. at 113). So "the ordinary restrictions of prison life . . . are expected and familiar." *Id.* Mr. Lien, by contrast, was questioned shortly after having been arrested and handcuffed. These were not circumstances that had become expected and familiar to him.

It is unsurprising, then, that the State evidently could not find, nor could we find, any case that treats interrogation of someone who has just been arrested and handcuffed as noncustodial as long as the questions do not concern the crime of arrest. An incarcerated prisoner's restricted living circumstances become expected, familiar and thereby noncoercive, but the stress associated with arrest exists irrespective of the subject matter of questioning. Because an offender who has just been placed under arrest is in the coercive circumstances that were the concern of *Miranda*, we find *Warner* and other cases involving the questioning of prisoners to be inapposite. Having just been formally arrested, Mr. Lien was in custody at the time he was questioned and the safeguards

9

prescribed by *Miranda* applied. *E.g.*, *State v. Daniels*, 160 Wn.2d 256, 266, 156 P.3d 905 (2007).

The State also argues that the question to Mr. Lien was not interrogation. In *Miranda*, the Supreme Court stated that "[b]y custodial interrogation, we mean *questioning* initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444 (emphasis added). In *Rhode Island v. Innis*, the Court clarified that interrogation also includes the "functional equivalent" of express questioning. 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Since statements that are freely and voluntarily given are not inadmissible, it held that "'interrogation'" under *Miranda* includes "any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect"—thereby excluding words or actions that unexpectedly elicit a volunteered response. *Id.* (footnote omitted).

After seeing what he believed to be drugs in the lockbox, Deputy Edelbrock asked Mr. Lien, explicitly, who the box belonged to. As observed by our Supreme Court in *State v. Sargent*, 111 Wn.2d 641, 650, 762 P.2d 1127 (1988), "[t]his is not the functional equivalent of interrogation—it *is* interrogation."

In concluding that the question was not interrogation because the deputy was conducting an inventory, not a criminal investigation, the trial court appears to have been applying the routine booking question exception to the inventory process. But when

10

determining whether the routine booking question exception applies, the court applies an

objective test to whether the questioner should have known that the question was

reasonably likely to elicit an incriminating response. *State v. Denney*, 152 Wn. App. 665,

671, 218 P.3d 633 (2009), *abrogated in part by Cross*, 152 Wn. App. 665 (2014). An

"'incriminating response'" is "any response—whether inculpatory or exculpatory—that

the *prosecution* may seek to introduce at trial." *Innis*, 446 U.S. at 301 n.5. In applying

the test, "[t]he relationship between the question asked and the crime suspected is highly

relevant." *Denney*, 152 Wn. App at 671-72 (citing *United States v. Booth*, 669 F.2d

1231, 1238 (9th Cir. 1981)). Asking Mr. Lien who owned the lockbox was not necessary

to an inventory and it is clear from the deputy's testimony about his own unease on

seeing the box's contents that he believed he was looking at a controlled substance

crime.[2] The trial court's findings supported by the record do not support a conclusion

that the deputy thought this was a routine question unlikely to elicit an incriminating

response.

---

[2] The affidavit later prepared in support of the application for a search warrant
stated, in part,

> The lock box was locked, but appeared to have been pried in the past.
> [Deputy] Edelbrock could see certain items inside the box without
> manipulating the box. [Deputy] Edelbrock could see a hypodermic syringe
> and some plastic baggies with white substance. From [Deputy] Edelbrock's
> training and experience, he believed those items to be drugs and/or drug
> paraphernalia, in particular either cocaine or methamphetamine.

CP at 48-49.

11

The State finally argues that questions do not become interrogation until probable cause is present, relying on *State v. Creach*, 77 Wn.2d 194, 461 P.2d 329 (1969) and *State v. Hilliard*, 89 Wn.2d 430, 573 P.2d 22 (1977). Its reliance is misplaced. Both cases address when, prior to arrest, interrogation becomes custodial. Neither concerns whether questions are interrogation. *Creach* held that the brief police questioning of an individual on a sidewalk in the course of the routine investigation involved in that case was not custodial, but held that "once an investigating officer has probable cause to believe that the person confronted has committed an offense . . . . *interrogation becomes custodial*, and the suspect must be warned of his rights." 77 Wn.2d at 198 (emphasis added). *Hilliard* similarly held that "[m]ere suspicion, before the facts are reasonably developed, is not enough to turn the questioning into a *custodial* interrogation." 89 Wn.2d at 436 (emphasis added). Neither case suggests that posing questions to an individual is not "interrogation."

The trial court's findings do not support its conclusion that Mr. Lien's admission to owning the lockbox did not take place in a custodial interrogation. We reverse the three possession convictions without prejudice and remand with directions to grant Mr. Lien's motion to suppress his admission.

A majority of the panel has determined this opinion will not be printed in the

12

No. 32443-5-III
*State v. Lien*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

13